## Sams *v.* New Kensington City Redevelopment Authority (et al., Appellant).

Argued October 8, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Stanley G. Makoroff,* with him *Hubert I. Teitelbaum, James K. O'Malley,* and *Morris, Safier & Teitelbaum,* for appellant.

*B. N. Hollander,* with him *Meyer Rothwacks,* and *Crombie J. D. Garrett,* Attorneys, Department of Justice, *Johnnie M. Walters,* Assistant Attorney General, *Thomas A. Daley,* Assistant United States Attorney, and *Richard L. Thornburgh,* United States Attorney, of the Washington, D. C. Bar, for United States of America, appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 30, 1970:

This is an appeal by Arch Lhormer from the order of the Court of Common Pleas of Westmoreland County determining the order of priority among competing claims asserted against a condemnation award in the hands of the condemnor.

On April 21, 1964, the Redevelopment Authority of the City of New Kensington acquired, by eminent domain, partnership property owned by William Sams and Samuel Mannarino. After extensive litigation, on February 6, 1969 a jury awarded the condemnees $200,-000.00 compensation, of which the sum of $186,665.00 remained due on April 8, 1969. On that date, on petition of the Redevelopment Authority, the court below ordered this sum paid into court and appointed a Master to determine the relative priorities of the competing claimants.

The dispute at bar is between the United States, relying upon certain tax liens, and Arch Lhormer, relying upon two assignments from Samuel and Rose Man-

narino of portions of their share of the condemnation award. After payment of approximately $53,000.00 worth of prior claims not here in issue the Master and the court denied Lhormer's claim, and awarded the balance of Samuel Mannarino's share to the United States. The United States here concedes that it was awarded too much. Even if its tax liens prevail over the assignment to Lhormer, the United States is not entitled to the balance of Samuel Mannarino's share, but only to the amount of the tax liens, $43,721.25. The Master and the court below erroneously awarded the United States part of Mannarino's share to cover the tax liens of $319,141.94 against Sams' share.

The real issue on this appeal is whether the tax lien against Mannarino or the assignment to Lhormer prevails. Samuel and Rose Mannarino made two assignments, under seal, to Lhormer, on July 1, 1966 and July 14, 1966. The July 1st assignment provided:

"I, Samuel Mannarino, of the City of New Kensington, Westmoreland County, Pennsylvania, one of the plaintiffs in the above entitled matter, in consideration of the sum of One ($1.00) Dollar, and other good and valuable consideration, receipt of which is hereby acknowledged, for myself, my heirs, executors, administrators and assigns, do hereby assign, transfer and set over unto Arch Lhormer, of the City of Pittsburgh, Allegheny County, Pennsylvania, his heirs, executors, administrators and assigns, all of my right, title, interest and claim of, in and to my share of the award made by the Board of Viewers, settlement made by the parties or final judgment entered by any Court of Record in the above entitled matter.

"*The present amount of such assignment shall not exceed $56,000.00 and, at the time of the payment of the award settlement or final judgment above mentioned, shall be no less than the balance then due on a mortgage note to Western Pennsylvania National Bank of*

*even date herewith, in the amount of $56,000.00, guaranteed by Samuel Mannarino, Arch Lhormer and others plus any payments made by Arch Lhormer on account of said mortgage note on behalf of Samuel Mannarino or Applewood Valley Estates, Inc., the mortgagor on the mortgage accompanying said mortgage note.*

"Arch Lhormer is authorized to notify the defendant in the above entitled matter of this assignment and his interest herein and to do all things necessary to protect his interest herein.

"It is understood and agreed that this assignment does not include the interest of any other plaintiff in the above entitled matter or Samuel Mannarino's interest in the $53,000.00 paid to the plaintiffs by the defendant as a partial payment in the above entitled matter." (Emphasis added).

The July 14th assignment stated that it was in addition to the July 1st assignment, and was virtually identical except that the present amount was $13,-320.00, as was a note to the bank.

The federal tax liens asserted were in the amount of $42,103.95, plus interest from the dates of levy, based on federal income tax assessments of September 2, 1966, March 22, 1968, and May 24, 1968. These tax liens were duly filed in the prothonotary's office of Westmoreland County, and notices of levy were sent on January 4, 1967, and February 12, 1969.

Appellant Lhormer contends, and the Government agrees, that the taxpayer must have some interest in the property or the federal tax lien cannot attach to it. Appellant claims that the assignments in the instant case divested Mannarino of any interest in the premises and that he, appellant, should thus prevail. The Government strongly disputes appellant's argument. We agree with the Government.

Despite appellant's contention to the contrary, the instruments labeled "assignments" in the instant case

were not outright assignments at all, but rather security agreements. It is clear from their form that they were intended to give appellant security with respect to the taxpayer-assignor's contingent liability to the appellant, an accommodation party on the notes. The amounts due to Lhormer on the assignments were to be no less than the balances then due on the notes, plus any payments on them which Lhormer might be called upon to make. If the notes were paid in full by others than Lhormer, Lhormer would be entitled to nothing. These are hardly outright transfers.

The issue then is whether the tax lien or the security interest prevails. If the Federal Tax Lien Act of 1966 were here applicable, there would be no question. 26 U.S.C. §6323(a), as *now* constituted, provides as follows: "The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate." §6323(h)(1) defines "security interest": "The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence *and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation,* and (B) to the extent that, at such time, the holder has parted with money or money's worth." (Emphasis added). In order to be protected against the subsequent lien creditor, i.e., in order that his security interest be perfected, the secured party must file a financing statement under §9-302(1) of the Uniform Commercial Code, Act of April 6, 1953, P. L. 3, 12A P.S. §9-302(1). Failure to

file thus deprives the security interest of priority over the federal tax lien under present law.[1]

However, if appellant would have had priority under the pre-1966 law, it would appear that he must prevail here. §114(b)(2)(A) of the 1966 Act provides: "The amendments made by this title shall not apply in any case . . . in which such amendments would impair a priority enjoyed by any person (other than the United States) holding a lien or interest prior to the date of enactment of this Act." Since the 1966 amendments did not become effective until November 2, 1966, and the assignments on which appellant relies were made in July of 1966, appellant is entitled to any priority he might have had under prior law.[2]

It is our conclusion that he was entitled to no more priority before 1966 than after that date. In the first place, the purpose of the 1966 Act was to help the private, secured creditors, not to injure them.[3] Secondly, there is even some doubt whether prior to 1966 a secured party such as Lhormer, who did not fit neatly into any of the slots of §6323(a) would be entitled to the benefits of that section even if he did perfect his interest.[4] Further, doubt had even been created as to

---

[1] See generally, Gerald K. Morrison, *The Federal Tax Lien Act of 1966; A correlation With Pennsylvania Law*, 72 Dickinson L. Rev. 144, 148 (1967).

[2] The pre-1966 version of §6323(a) was as follows: "Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor, until notice thereof has been filed by the Secretary or his delegate. . . ."

[3] Senate Report No. 1708, U. S. Code Congressional and Administrative News, 89th Congress, Second Session, 1966, Vol. 3, p. 3723.

[4] Although 2 Federal Tax Regulations §301-6323(2)(ii) (1963) does indicate that the Government was not committed to a literal interpretation of the section, the Regulation did stop short of saying that any Article 9 secured party was within the section.

whether *any* security interest could attain the degree of choateness required to prevail over a federal tax lien. See *United States v. R. F. Ball Construction Co.*, 355 U.S. 587, 78 S. Ct. 442 (1958), and *First State Bank of Medford v. United States*, 166 F. Supp. 204 (D. Minn. 1958). Although an interpolation from the per curiam reversal by the Supreme Court in *Crest. Finance Co., Inc. v. United States*, 368 U.S. 347, 82 S. Ct. 384 (1961), would indicate that in some cases private security interests can prevail over federal tax liens, the inexorable conclusion is that those security interests must be perfected in order to prevail. Although the precise situation of a private Article 9 security interest that was not a mortgage or pledge has not been before the Supreme Court, on numerous occasions that Court has stated that "as against a recorded federal tax lien, the relative priority of a state lien is determined by the rule 'first in time is first in right' which in turn hinges upon whether, on the date the federal lien was recorded, the state lien was 'specific and *perfected.*'" (Emphasis added). *United States v. Equitable Life*, 384 U.S. 323, 327, 86 S. Ct. 1561 (1966).

We recognize that there is a split of authority on the question of the relative priority of a duly filed federal tax lien and an unrecorded security interest. Compare the cases cited in footnote 4 of the Government's brief with those cited in footnote 5. We further recognize that a reasonable argument exists that the unrecorded security interest should prevail because the Government, unlike a subsequent creditor or bona fide purchaser, did not rely upon the state of the record. So long as the security interest is valid as between the parties, the argument goes, it should be valid against the Government as well. See, particularly, *United States v. Lebanon Woolen Mills Corp.*, 241 F. Supp. 393 (D.N.H. 1964).

However, on the other side is the argument that the federal revenues must be protected, and that a requirement of filing a financing statement will prevent fraudulent attempts to back-date security arrangements. Cf. *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 71 S. Ct. 111 (1950). This latter argument obviously prevailed in the 1966 Act, an Act which, as we have stated, made things easier for secured creditors. The language of the cases stretching back approximately twenty years would indicate that the Supreme Court had also adopted the argument that security interests must be perfected to prevail. *United States v. Equitable Life,* supra.

We need not attempt to analyze those cases thoroughly here. In some thirty-five pages in his treatise, *Security Interests in Personal Property,*[5] Professor Gilmore has treated in great detail the competition between federal tax liens and other claims, including private security interests. He has performed the Herculean task of examining the tortured involutions of the Supreme Court, and the often pathetic cries of the lower federal courts and the state courts which were forced to act in the face of Supreme Court cases which seemed to conflict with each other every year and which were often in the form of per curiam reversals. We need not repeat Professor Gilmore's work here. Suffice it to say that he concludes definitively at page 1068, that a security interest, to prevail, must be perfected under applicable state law. We agree with his reasoning and hold that, Lhormer's security interest not having been perfected, it is subordinate to the federal tax liens.

The order of the court below is affirmed, except insofar as it awards the Government more than the

---

[5] Gilmore, *Security Interests in Personal Property* (Little, Brown, 1965), Vol. II, Chap. 40, pp. 1047-1073.

amount of its liens against Mannarino. The case is remanded for a determination of the proper disposition of the excess of the fund not properly payable to the Government.