**GOLD MEDAL PRODUCTS, INC.,**
Plaintiff–Appellant,

v.

**LOVE ENTERPRISES, INC.,**
Defendant–Respondent.

No. 15580.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 24, 1989.

W. Henry Johnson, Neosho, for plaintiff-appellant.

Robert W. Evenson, Evenson, Carlin & LePage, Pineville, for defendant-respondent.

HOGAN, Judge.

This appeal presents a question of priority of interest in the proceeds of a lawsuit under the provisions of § 400.9–301(1)(b), RSMo 1986.[1] Section 400.9–301(1)(b), prior to its amendment in 1988, read as follows:

"(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of

... (b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected ..."

 The language is the language of the 1962 version of the Uniform Commercial Code. The import of § 400.9–301(1)(b) has been explained thus:

"Section 9–201 states the basic right of the secured creditor vis-a-vis other competitors. The first sentence of that section reads as follows:

'Except as otherwise provided by this Act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors.'

The sentence means what it says, and the secured creditor, even an unperfected secured creditor, has greater rights in his collateral than any other creditor unless Article Nine provides otherwise.

. . . . .

Here we will treat ... conflicts between a secured creditor and a lien creditor who is not a trustee in bankruptcy. Section 9–301 governs, and provides in general that an unperfected secured creditor loses to a lien creditor and, by negative implication, that a perfected secured creditor beats a lien creditor. ...

The most important provision is (1)(b) which renders an unperfected secured creditor subordinate to the rights of one who 'becomes a lien creditor *without knowledge of the security interest* and before it is perfected....' Thus, if a bank takes a security interest in debtor's equipment but fails to file a financing statement or to take possession, and an unsecured creditor levies against the property and so procures a judicial lien

---

**1.** References to statutes and rules are to RSMo 1986 and V.A.M.R. unless otherwise noted.

on it, the unsecured creditor will have a prior right *unless he had 'knowledge' of the security interest when he procured his lien....*" (Emphasis ours.) J. White and R. Summers, Uniform Commercial Code § 25–2, pp. 901–902 (1972). See also 9 R. Anderson, Uniform Commercial Code § 9–301:21, p. 34 (1985).[2] Also to be borne in mind is that a "security agreement" means an agreement which creates or provides for a security interest. Section 400.9–105(1)(h). With certain exceptions which the parties have assumed are not applicable, an assignment of a right to the proceeds from an impending lawsuit, if taken as security for a debt, constitutes a security agreement creating a security interest in the right to proceeds. *Board of County Commissioners, Etc. v. Berkeley Village,* 40 Colo.App. 431, 580 P.2d 1251, 1255[4] (Colo.App.1978); *Estate of Hill,* 27 Or.App. 893, 557 P.2d 1367, 1372 (1976); *Friedman, Lobe & Block v. C.L.W. Corporation,* 9 Wash.App. 319, 512 P.2d 769, 771 (1973); B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code para. 1.03, p. 1–16 (2d ed. 1988). Such an assignment is not an assignment of "a right represented by a judgment" so as to be excluded from the application of Article 9 by § 400.9–104(h); it constitutes the assignment of a "general intangible" as that term is defined by § 400.9–106. *Board of County Commissioners, Etc. v. Berkeley Village,* 40 Colo.App. 431, 580 P.2d at 1255[4]; *Friedman, Lobe & Block v. C.L.W. Corporation,* 9 Wash.App. 319, 512 P.2d at 771. Such an assignment of proceeds is not a perfected lien until a financing statement is filed pursuant to § 400.9–302(1). *Board of County Commissioners, Etc. v. Berkeley Village,* 40 Colo.App. 431, 580 P.2d at 1255; *Sams v. Redevelopment Authority,* 436 Pa. 524, 261 A.2d 566, 568 (1970). Our inquiry on this appeal is whether, upon the facts presented, defendant's assignment of the anticipated proceeds of a lawsuit is superior to the plaintiff's claim to those proceeds as a garnishment creditor. The trial court held the assignment was entitled to priority. We conclude the trial court's ruling was not erroneous for any reason assigned as error in this court.

■ As necessary to an understanding of our opinion, the background facts are that on September 18, 1986, plaintiff Gold Medal Products obtained a judgment against defendant Love Enterprises in the amount of $15,146.25. At that time, Love had a claim for damages against Trogdon, Felber & Associates, Inc., (hereinafter Trogdon–Felber) a Jackson County firm and Ford Insurance Agency, Inc., (hereinafter Ford) a firm which has offices in Barry County. Love's claim against Trogdon–Felber and Ford was not reduced to judgment until June 27, 1987, although the exhibits filed indicate this claim—referred to here as case CV186–19CC—was being prosecuted in the Circuit Court of McDonald County on March 14, 1987. Love recovered the sum of $154,677.22, but the record suggests that Trogdon–Felber and Ford appealed, and thereafter, a settlement agreement was negotiated between Love, Trogdon–Felber and Ford. The terms of the agreement are not disclosed, but it appears that Love agreed to accept $115,-000 from Ford and $7,500 from Trogdon–Felber in satisfaction of the judgment it had obtained on June 27, 1987.

Love assigned its claim against Trogdon–Felber and Ford on March 14, 1987, before it obtained judgment against those corporations. On March 14, Love executed an "Assignment of Claim Proceeds" which recited that Love Enterprises, Inc., "has a claim ... against Trogdon, Felber & Associates, Inc., and Ford Insurance Agency,

**2.** The 1972 amendments to the U.C.C. deleted the words "without knowledge" from paragraph (b) of subsection (1) of section 9–301 of the Code. The official reason given for the amendment was that the 1962 version "... denied the lien creditor priority even though he had no knowledge when he got involved by extending credit, if he acquired knowledge while attempting to extricate himself. It was completely inconsistent in spirit with the rules of priority between security interests, where knowledge plays a very minor role." Official Reasons for 1972 Change, appended to 1972 amendments to § 9–301 of the Uniform Commercial Code, 3 U.L.A. 336 (1981). Missouri adopted the 1972 amendments to § 9–301 in 1988. Laws of Mo. 1988 S.B. 583, effective January 1, 1989.

Inc.," and that claim "is being prosecuted in the Circuit Court of McDonald County, Missouri by Attorney Robert W. Evenson." The assignment also recites that McDonald County Mercantile Bank agrees to loan Love the sum of $125,000 upon terms and conditions to be set forth in a promissory note and security agreement to be executed by Love, and further recites that:

> "... as additional security, Love Enterprises, Inc. transfers and assigns unto McDonald County Mercantile Bank, *all proceeds* from its claim against Trogdon, Felber & Associates, Inc. and Ford Insurance Agency, Inc., less attorneys fees and expenses in the prosecution of the claim, *and further authorizes their attorney, Robert W. Evenson* to pay over to said McDonald County Mercantile Bank, such funds from the proceeds of said claim." (Our emphasis.)

Love also executed a "Partial Assignment of Claim Proceeds" which appears to be a further assignment of the same claim to one Wayne Alexander. The record indicates that payment of the sums assigned to the bank and to Alexander would exhaust the proceeds of Love's claim against Trogdon–Felber, Ford and others, but the priority of the assignments is not in issue on this appeal.

The controversy is before us on a motion to quash garnishment. The regularity of the garnishment procedure is not questioned in this court. At Gold Medal's request, notices of garnishment and Summonses to Garnishee were issued and served upon Trogdon–Felber and Ford at some time subsequent to July 27, 1987, pursuant to Chapter 525 and Rule 90. On September 1, 1987, defendant Love filed a motion to quash garnishment in the Circuit Court of McDonald County, on the grounds, among others, that Gold Medal had knowledge of the two assignments before its judgment lien attached. After a

hearing, the trial court granted the motion to quash.[3]

As we have indicated, the issue presented on the motion to quash is whether Gold Medal had "knowledge" of the assignment to the bank and the other, partial, assignment when it became Love's lien creditor. Mr. Evenson, attorney for Love, testified as follows:

> "We [Love Enterprises] got our judgment June 27th, and it was either the Monday or the Tuesday after the trial that Hank[4] called me; and that would have been June 29th or June 30th. And—And he said, 'Congratulations,' you know, 'on your judgment,' and he said, 'looks like I'm going to get paid or I hope I can get paid.' And I said, 'Hank, we've got some real problems here on getting you paid, getting your client paid.' I advised him that I didn't know whether they were going to appeal and that we had one defendant that claimed that he didn't have any assets or little or no assets and no insurance. And so that left it all on the other one, and they weren't happy about it. *And I said, 'Besides that, the McDonald County Bank has got an assignment for $125,-000.'*
>
> *And I believe, I don't specifically recall that I told him, you know, 'And besides that, there's another assignment.* So there's not going to be any money left to pay your judgment out of this fund. I'd love to get you paid. I'd love to get rid of the problem, but there ain't going to be any because of this situation if we get the whole load; and I don't know what we're going to get.' And that was basically the end of the conversation." (Our emphasis.)

Mr. Johnson then testified as follows:

> "I received information that there—Of course, I already knew the suit was pending. Bob had sent me a copy of the petition, and I had been watching the

---

**3.** No objection was made to the use of a motion to quash as a vehicle for determining whether the rights assigned by Love were subject to attachment by garnishment. In our view, Gold Medal is not now in a position to object to the procedure followed. See *Ahlgren v. Colvin-*

*Weber Realty & Investment Co., Inc.,* 507 S.W.2d 686, 688[3, 4] (Mo.App.1974). See also 38 C.J.S. Garnishment § 270, pp. 535–36 (1943).

**4.** Mr. W. Henry Johnson, the attorney who represented Gold Medal.

records for that on, I believe, a Saturday. I think June 27th the jury finally came in with a verdict, something in excess of $150,000. Shortly thereafter, I would guess between two or three days after that, I called him up. He had indicated in a portion of that conversation, which he recalls—I recall it somewhat differently—I did congratulate him on his fine results, excellent results in that matter. He indicated to me he hoped that they would recover it. One of the judgment debtors was solvent and one was somewhat questionable. He did—During our conversation, I am sure I brought up reminding him of our judgment and what was to be paid on that.

*At that time it's my recollection he said, 'There isn't going to be anything for you. That's all been assigned to the bank.'* There was no mention that I recall, in going through my file, I see no mention of an amount at that time. *He didn't specifically mention the bank. Frankly, I was aware of which bank it was going to be. It was going to be McDonald County Mercantile, the bank that dealt with them;* but there was no mention of that.

When he informed [me] of that, in light of the previous communications I had with him, I made a trip to McDonald County, got a certified copy of the judgment, and I searched the records. And at that time I discovered that there was —there were no filings regarding any loans obtained in the spring, either from McDonald County Mercantile Bank or any other bank. After completing that investigation, we issued an execution, directed garnishment to be served on both of the judgment debtors in that suit." (Emphasis ours.)

The sole point advanced in this court is stated thus:

"The trial court erred in sustaining respondent's motion to quash garnishment because appellant did not have 'knowledge' of the two partial assignment[s] from Love to Wayne Alexander and the McDonald County Mercantile Bank as the term 'knowledge' is defined under the applicable state law."

A number of authorities are cited, we have considered them and shall discuss some of them, but we wish to indicate clearly the limitation of our opinion. The proceeding was tried to the court. Long before the scope of appellate review in bench-tried cases was definitively stated in *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976), our Supreme Court indicated that in court-tried cases, an appellate court performs its function "only in respect to the specific matters urged by appellant as constituting error. [The appellate court] does not review the whole case on its own initiative to determine what result it would have reached if it were sitting as the trial judge." *Schlanger v. Simon,* 339 S.W.2d 825, 828 (Mo.1960). See also *Buxton v. Horn,* 452 S.W.2d 250, 251[1] (Mo.App. 1970). We therefore consider only whether the trial court could have found that Gold Medal had "knowledge" of the assignments, particularly the assignment to the bank, inasmuch as the assignment to the bank was an assignment of all the proceeds of Love's judgment against Trogdon–Felber and Ford. An indebtedness owing to a judgment debtor is an intangible personal property right, *In re Riverfront Food and Beverage Corp.,* 29 B.R. 846, 849 (Bankr.E.D.Mo.1983), and it is the service of a Summons to Garnishee which creates a lien on the intangible personal property "held" by the garnishee. *In re Riverfront Food and Beverage Corp.,* 29 B.R. at 849; *Vittert Construction and Investment Co. v. Wall Covering Contractors, Inc.,* 473 S.W.2d 799, 804[5] (Mo.App.1971). Gold Medal thus became a lien creditor within the meaning of § 400.9–301(1)(b) when the Summons to Garnishee was served upon Trogdon–Felber and upon Ford. We do not know the date of service precisely; we do know the Summons to Garnishee was served some time after the assignment to the bank was executed.

May it be said then, that Gold Medal had "knowledge" of the assignment to the bank when it caused its writs of garnishment to issue? We think it can. It is a reasonable inference that when Mr. Johnson called Mr. Evenson, Mr. Johnson was acting as agent

for Gold Medal, although he may also have been interested in his attorney's fee. In general, the knowledge of a party's attorney is knowledge of or is imputed to, the party. *Leith v. Mercantile Trust Company National Ass'n*, 423 S.W.2d 75, 86 (Mo. App.1967). There is some degree of analogy between this case and *Stanley v. Fabricators, Inc.*, 459 P.2d 467 (Alaska 1969). A number of questions were involved in the *Stanley* case, but in particular the court considered the claim of an attachment creditor that the trial court erred in holding it had knowledge of an unperfected security interest at the time it caused its attachment to issue. In *Stanley*, agents of the lien (attachment) creditor acquired knowledge of an unperfected security interest (a lease) in the course of a luncheon meeting at which the lien creditor's agents were advised of the unperfected security interest by an agent of the holder of that interest. The court held that the unperfected security interest was *not* subordinate to the attachment creditor's lien. *Stanley v. Fabricators, Inc.*, 459 P.2d at 472[4]. In this case, the testimony of the attorneys concerning their telephone conversation at or near the time Love took judgment against Trogdon–Felber and Ford warranted the conclusion that Gold Medal had actual knowledge of the bank's unperfected security interest at the time Gold Medal sued out its writs of attachment.

The cases cited and relied on by Gold Medal are not controlling here. This is not a case in which a competing creditor had notice of a defective security interest, as was true in *Centerre Bank National Association v. Missouri Farmers Association*, 716 S.W.2d 336 (Mo.App.1986). In that case, it would have made no difference what notice or knowledge MFA had of Centerre's security interest because as the court specifically held, Centerre had no valid security interest. *Centerre Bank National Association v. Missouri Farmers Association*, 716 S.W.2d at 340. In the case at hand, the assignment of the proceeds of Love's claim against Trogdon–Felber and Ford was a perfectly valid assignment of a "general intangible" within the meaning of § 400.9–106. The appellant's argument concerning "notice" is unavailing. Section 400.1–201(25) provides that a person "knows" or has "knowledge" of a fact when he has actual knowledge of it. Here the attorney for Gold Medal was advised directly by Love's attorney that the proceeds of Love's claim had been assigned. The conversation between the two attorneys was sufficient to give Gold Medal "knowledge" as well as "notice." *Stanley v. Fabricators, Inc.*, 459 P.2d at 472–73.

The order quashing the writs of attachment is not erroneous for any reason briefed or developed in this court. Accordingly, the order is affirmed.

FLANIGAN, P.J., and MAUS and PREWITT, JJ., concur.