United States Court of Appeals,

Fifth Circuit.

No. 92-2644.

In the Matter of Bobby Lynn NEWMAN, Debtor.

Gary KNOSTMAN, trustee of the estate of Bobby Lynn Newman, Appellee,

v.

WEST LOOP SAVINGS ASSOCIATION, Appellant.

June 14, 1993.

Appeal from the United States District Court For the Southern District of Texas.

Before, REYNALDO G. GARZA, WILLIAMS and JONES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

West Loop Savings Association ("West Loop") appeals from an adverse summary judgment entered by the district court, which held that West Loop held an unperfected security interest in an annuity contract assigned by the debtor Bobby Lynn Newman ("Newman"). The court held that the annuity contract was a general intangible and, as a result, a financing statement was required to be filed with the secretary of state in order to complete perfection. West Loop contends that the annuity contract is not a general intangible, but an instrument and, therefore, its security interest was perfected upon delivery. We agree with the district court that the annuity contract is a general intangible and, therefore, the case is in all respects AFFIRMED.

## BACKGROUND

West Loop is a creditor in Newman's bankruptcy. West Loop had loaned Newman an amount in excess of $166,000.[1] As security for the loan West Loop received an assignment of an annuity contract issued by Manufacturers Life Insurance Company ("MLIC"). However, West Loop neglected to file a financing statement with the Texas Secretary of State.

This action started when appellee Knostman, the trustee, filed an adversary proceeding in the

---

[1] The original loan amount was at least $166,000 because that amount, exclusive of interest and attorneys fees is still owed to West Loop.

bankruptcy court under Section 544 of the Bankruptcy Code.[2] While it was undisputed that West Loop held a security interest in the annuity, it was disputed as to whether West Loop had perfected its security interest in the annuity.

West Loop argued that the certificate was an instrument, which is automatically perfected upon delivery. However, the court held that the certificate was a general intangible, and West Loop had failed to perfect its assigned interest. The court noted the definition of a general intangible, which reads: "any personal property (including things in action) other than goods, contracts, chattel paper, documents, instruments and money." Tex.Bus. & Com.Code § 9.106.[3]

The bankruptcy court reasoned that the annuity contract is not "of a type which is in the ordinary course of business" transferred by delivery. Tex.Bus. & Com.Code § 9.105(a)(9) (one of the requirements for "instrument" status). The annuity contract states:

> [an] assignment does not bind us until we receive it at one of our offices; we are not responsible for its validity or its effects; it should be filed with us in duplicate; we will return a copy.

The court determined that this language precludes delivery of the writing together with an assignment as an effective transfer of rights and, thus, it concluded that the certificate was not an instrument. Because the certificate was found to be a general intangible, and West Loop did not file a financing statement it held an unperfected security interest, which was trumped by the trustee under Section 544(a)(1). West Loop appealed to the district court.

On appeal, the district court properly narrowed the issue as to whether the annuity contract was an instrument or a general intangible. The court noted that the definition of instrument in this case came down to two elements. The annuity contract must: (i) evidence a right to the payment of money; and (ii) be of the type which is in the ordinary course of business transferred by delivery with

_____

[2]Section 544 confers strong avoidance powers upon the trustee, and creditors who hold unsecured interests are subordinated to the trustee. 11 U.S.C. § 544.

[3]The official comment issued at the time Section 9.106 was adopted provides that:

> [t]he term "general intangibles" brings under this Article miscellaneous types of contractual rights and other personal property which are used or may be customarily used as commercial security.

an endorsement or assignment. Tex.Bus. & Com.Code 9.105(a)(9).

The district court reasoned that the annuity contract did not evidence a right to payment of money to the person in possession of the certificate. The court focused on the contractually specified method of changing the beneficiary. It found that possession of the certificate alone without following the method of changing the beneficiary did not entitle the transferee to receive annuity payments.

The court further elaborated that delivery of the certificate alone is insufficient to confer rights in the assignee until, MLIC receives notice of the assignment. Therefore, it concluded that "this is not the type of writing which is transferred by delivery with an assignment in the ordinary course of business." Therefore, the district court affirmed the bankruptcy court on the ground that the annuity contract was a general intangible.[4] West Loop appeals.

## DISCUSSION

The only issue to be confronted on appeal is: did West Loop perfect its security interest in the annuity contract it received from the debtor, Newman. This issue reduces to the classification of the annuity contract. If the contract is a general intangible, then West Loop perfected its security interest in the annuity; however, if the contract is an instrument, then West Loop did not perfect its security interest. We find that the contract is a general intangible and, thus, West Loop had to file a financing statement with the secretary of state in order to perfect its security interest. As a result of West Loop's failure to file a financing statement, they now hold an unsecured interest in the annuity.

## Standard of Review

Classification of collateral under the UCC is a question of law. *See In re Coral Petroleum, Inc.,* 50 B.R. 830, 837 (Bankr.S.D.Tex.1985). The reason that classification is a question of law is based upon the purpose of the UCC, which is to "simplify, clarify, and modernize the law governing commercial transactions." *Id.* (*citing* U.C.C. § 1-102(2)(a); *First Nat'l Bank in Grand Prairie v.*

---

[4]The court also noted in a footnote that "[e]ven if the annuity contract were an instrument, it is questionable whether West Loop had possession of the proper document to perfect its security interest. West Loop had possession of the annuity certificate, not the annuity contract."

*Lone Star Life Ins. Co.,* 524 S.W.2d 525, 533 (Tex.Civ.App.—Dallas 1975, *writ ref'd n.r.e.*)). We review questions of law *de novo. F.D.I.C. v. Ernst & Young,* 967 F.2d 166, 169 (5th Cir.1992); *Christopherson v. Allied-Signal Corp.,* 939 F.2d 1106, 1109 (5th Cir.1991) (en banc), *cert. denied,* --- U.S. ----, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992).

### General Intangible or Instrument

The UCC defines a general intangible merely by stating what is not a general intangible.[5] A general intangible is essentially a bundle of rights such as those inherent in a franchise, a chose in action, a copyright, or an annuity. *See Flanigan's Enterps., Inc. v. Barnett Bank of Naples,* 614 So.2d 1198, 1201 (Fla.Ct.App. 5th Dist.1993) (dicta) (*citing* 73 C.J.S. Property § 15 (1983)); *see also In re Holiday Intervals, Inc.,* 931 F.2d 500, 503 (8th Cir.1991) (land sale installment contract general intangible); *In re Nix,* 864 F.2d 1209, 1211 (5th Cir.1989) (Keogh plan general intangible); *In re Hartman,* 102 B.R. 90, 93 (Bankr.N.D.Tex.1989) (one-half partnership interest general intangible); *In re Bell Fuel Corp.,* 99 B.R. 602, 604 (Bankr.E.D.Pa.) (contractual right to receive insurance constitutes chose in action and thus general intangible), *aff'd,* 891 F.2d 281 (3d Cir.1989); *Gold Medal Prods., Inc. v. Love Enterps., Inc.,* 766 S.W.2d 759, 761 (Mo.Ct.App.1989) (assignment of right to proceeds from pending lawsuit general intangible); *cf Smith v. Mark Twain Nat'l Bank,* 805 F.2d 278, 285 (8th Cir.1986) (repurchase agreement and certificate of deposit instruments); *In re Staff Mortgage & Inv. Corp.,* 625 F.2d 281, 284 (9th Cir.1980) (promissory note secured by deeds

---

[5]Section 9.106 "defines" a general intangible as follows: "any personal property other than goods, accounts, chattel paper, documents, instruments and money." Tex.Bus. & Com.Code § 9.106.

> The term "general intangibles" brings under this Article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Note that this catch-all definition does not apply to money or other types of intangibles that are specifically excluded from the coverage of the Article under Section 9.104.

> Section 9.104, Uniform Commercial Code provision 9-104, excludes twelve types of transactions from the scope of Article 9. Section 9.104's exclusions fall generally under three main categories: (i) transactions that are subject to overriding governmental interests; (ii) transactions that are nonconsensual; and (iii) transactions that are out of the mainstream of commercial financing. *See* W. Hawkland, R. Lord, and C. Lewis, Uniform Commercial Code Series § 9-104:01 (1988).

of trust instrument).

There is a dearth of case law on the classification of general intangibles.[6] In fact, most of the cases focus on the difference between an account and a general intangible. *See, e.g., In re Slippery Rock Forging, Inc.,* 99 B.R. 679, 681 (Bankr.W.D.Pa.1989) (settlement of preference action found not to be account and by default general intangible). In two of the cases that were faced with the issue of general intangible versus instrument, the courts in each instance tersely concluded that the bundle of rights in question were general intangibles. *See In re ESM Government Secs., Inc.,* 812 F.2d 1374, 1377 (11th Cir.1987) (right to payment of funds from repurchase of GNMAs was not an account or instrument and thus general intangible); *Union Inv., Inc. v. Midland-Guardian Co.,* 30 Oh.App.3d 59, 506 N.E.2d 271, 273 n. 2 (1986) ("Without a detailed explanation of our reasons, we find that the [promissory] note ... is a general intangible").

Perhaps the only substantive confrontation with the instrument versus general intangible classification occurred in *Coral Petroleum. See Coral Petroleum,* 50 B.R. at 837-39. In *Coral Petroleum,* Bankruptcy Judge Manuel Leal concluded that a promissory note was an instrument. *See id.* at 838. Interestingly, the creditor in *Coral Petroleum* sought to have the note classified as a general intangible in order to have a perfected security interest because it did not possess the note, but had filed a financing statement. *See id.* at 835. Conversely, herein West Loop seeks to have the annuity classified as an instrument because it has possession, but did not file a financing statement.[7]

*Coral Petroleum* approached the problem in a pragmatic manner. The court concluded that the test for determining whether a writing is transferable in the ordinary course of business hinges on

---

[6]Incidentally, the appropriate classification of an annuity appears to be an issue of first impression.

[7]If collateral is classified as an instrument, then the only way to perfect is to take possession via a pledge. Tex.Bus. & Com.Code § 9.304(e)(1). On the other hand, if collateral is classified as a general intangible, then the only way to perfect is to file a financing statement. *See* Barkley Clark *The Law of Secured Transactions Under the Uniform Commercial Code,* ¶ 7.03 (2d Ed.1988) (hereinafter "Clark *Secured Transactions* "). This case painfully illustrates the problems that creditors encounter when they fail to account for Article 9 problems. The best practice in cases where a precise categorization is elusive, would be to comply with both requirements. Creditors who foresee Article 9 problems when acquiring collateral are "handsomely rewarded for their knowledge of the breadth of Article 9." *Id.* at ¶ 1.03.

what professionals would ordinarily do to transfer such an interest. *Id.* at 838 (*citing* Harris, *Non-negotiable Certificates of Deposit: An Article 9 Problem,* 29 U.C.L.A.L.Rev. 330, 372 (1981)). The court reasoned that if professionals would attach significance to possession of the writing and treat certain collateral as an instrument, then the law should likewise treat the collateral similarly. *See id.*[8]

After carefully reviewing the record, we find no indication that this or any other annuity is transferred in the regular course of business by endorsement. In an instance such as this, where precise categorization is unclear, it seems to this court that a finding of general intangible is warranted. The cases indicate that collateral such as certificates of deposit and promissory notes are instruments because professionals attach significance to their possession. However, interests such as Keogh Plans and the contractual right to receive insurance are treated as general intangibles because they are not customarily transferred by delivery with endorsement. These annuities are general intangibles because based upon the "reasonable professional standard" outlined in *Coral Petroleum* there is no indication that they are regularly traded by delivery or that possession of the annuity certificate confers the right to payment.

In a vacuum, if left to formulate our own test for distinguishing between a general intangible and an instrument, our benchmark would begin with the definition of an instrument.[9] Section 9.105(a)(9) defines an "instrument" as "any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type of which is in the ordinary course of business transferred by delivery with any necessary indorsement or assignment." Tex.Bus. &

---

[8]In Clark, *Secured Transactions,* at ¶ 7.03, p. 7-8, the author discusses *Coral Petroleum,* and states:

> In short, the definition of "instrument' in the UCC is broad and intentionally incorporates standard banking practice. The fact that the note was nonnegotiable and of limited transferability did not prevent it from being an instrument that could be pledged as collateral and for which possession was the only proper method of perfection.

*Id.*

[9]We note that the annuity contract is not a "good, account[ ], chattel paper, document ... or money." Tex.Bus. & Com.Code § 9.106.

Com.Code § 9.105(a)(9). Because the annuity contract in question: (i) does not evidence a right to payment on its face; and (ii) is not ordinarily transferred by delivery, it is not an instrument.

Further, it appears from the face of the contract that possession alone is not enough to confer the right to payment. The Certificate reads:

> Protection of Payments. If you choose someone other than yourself to receive payments, that payee cannot commute, assign, or encumber the payments unless that right was granted when the payee was chosen. The same is true if the beneficiary chooses someone else to receive the payments.

The trustee contends, and we agree, that based upon this language possession is irrelevant to the right to receive payments. The trustee also asserts that the certificate expressly contemplates that persons other than the owner of the annuity contract, or the possessor of the certificate, may receive payments. This contention is buttressed by reading the provision entitled "currency and place of payment," which conspicuously omits any requirement of possession.[10] We agree with the lower court and conclude that possession of the certificate alone does not convey the right to receive payments.

Further, the court below noted that the annuity contract provided that any assignment was not binding on MLIC until it received a copy of the assignment. Consequently, the court concluded that "the delivery of the writing together with the assignment is not sufficient to transfer the rights conferred by the annuity certificate. Rather, the extra step of notice and delivery is required."

West Loop argues that the language in the annuity contract merely governs the rights of MLIC vis a vis Newman. They argue that "the language quoted by the bankruptcy court has nothing to do with the transfer of what the law requires, but only with MLIC's claimed rights." West Loop also contends that the steps of notice and delivery apply equally in the event that a financing statement was required and that failure in that instance would not impair their perfection.

---

[10]CURRENCY AND PLACE OF PAYMENT:

> All payments to or by use will be in the lawful currency of the United States of America. We will make payments at any of our offices in the United States. We may require proof that the person claiming any payment is entitled to it.

> An assignment does not bind us until we receive it at one of our offices; we are not responsible for its validity or its effects....

The principal case that West Loop relies on is *First Nat'l*. To be sure, *First Nat'l* does lay out a tripartite test needed for instrument status. The test reads as follows: (i) a writing; (ii) that evidences a right of payment; and (iii) is transferred by delivery with assignment. The appellants tersely contend that the test is met in the instant case.

*First Nat'l,* however, involved a certificate of deposit. There is extensive case law holding that a certificate of deposit is an instrument. *See, e.g., Smith,* 805 F.2d at 285. *First Nat'l* held that the certificate of deposit was an instrument despite the fact that on its face it was "non-negotiable." Really, the case does not appear to help here because it merely establishes the difference between a negotiable instrument and an instrument. Rather, in the present case we are faced with a choice between instrument and general intangible. In any event, West Loop has failed to prove that this annuity contract is transferred by delivery with assignment in the ordinary course of business.

## CONCLUSION

The annuity contract that Newman assigned to West Loop was a general intangible. The annuity contract is a general intangible principally because after applying the reasonable professional test outlined in *Coral Petroleum* we conclude that professionals do not attach significance to the possession of the annuity certificate itself. Moreover, the language of the annuity contract does not contemplate that the annuity is an instrument. Consequently, we find that West Loop holds an unperfected security interest in the annuity contract, and we AFFIRM the district court's summary judgment in favor of the trustee.