# WFIC, LLC v. LaBarre

*Michael G. Trachtman, Benjamin A. Andersen* and *David M. Burkholder,* for plaintiff.
*Mark C. Cavanaugh, George Bochetto, David P. Heim, John A. O'Connell, Stephenie W. Yeung, Ralph G.*

*Wellington, Aaron E. Moore, Arthur W. Lefco, Gina M. Scamby-Stowe, Andrew K. Stutzman* and *Mitchell L. Paul,* for defendants.

GLAZER, *J.,* November 13, 2013—

## PROCEDURAL AND FACTUAL HISTORY

Plaintiff, WFIC, LLC, initiated the current action against multiple defendants alleging: (1) conversion[1]; (2) interference with contractual relations[2]; (3) breach of contract[3]; (4) unjust enrichment[4]; and (5) replevin[5]. This suit is grounded upon a series of events, dating back to the late 1990s. Between 1998 and 1999, Larry Martin ("Martin") made three loans to defendant Polymer Dynamics, Inc. ("PDI") totaling $1,400,000, on which PDI subsequently defaulted. In response to PDI's failure to pay, Martin's attorney, Allen Turner ("Turner") filed a confession of judgment. At that time, PDI was insolvent and claimed as its primary asset a lawsuit against Bayer Corporation ("Bayer"), which included claims of breach of contract and negligent misrepresentation.[6] *See* brief of defendant William Anthony Hitschler on Bifurcated Issues to be Resolved by the Court, ex. 1. PDI believed all of its claims against Bayer would result in an award of at least $100 million. *See* WFIC complaint, ¶12. Upon

---

1. Against all defendants except Wells Fargo, jointly and severally.
2. Against all defendants except Wells Fargo, jointly and severally.
3. Against PDI.
4. Against all defendants except McKissock and Wells Fargo.
5. Against Ardeleigh Partners, Hitschler, PDI, Peoples, and Wells Fargo
6. PDI alleged that Bayer machinery, for which PDI relied upon to maintain its business, had malfunctioned, resulting in PDI's insolvency. The complaint also included allegations of fraud, breach of fiduciary duty, misappropriation of confidential commercial information, unfair competition, and breach of disclosure agreement.

discovering PDI's insolvency and pending litigation, Martin agreed, based on Turner's advice, to release the confessed judgment in exchange for entering into a settlement agreement containing a promissory note secured by a collateral assignment and security agreement ("Assignment"). The Assignment granted Martin a security interest in a portion of potential proceeds "for any claim in tort or contract which PDI has or may assert against Bayer Corporation arising from the contract for the sale and or lease of machinery...." *See* WFIC compl., Ex. B. The Assignment specifies that any proceeds from the Bayer litigation are first to be applied to attorneys fees, then to any payments owed to the government, and third to all amounts then due and unpaid to Martin. *See id.* Additionally, the Assignment states that:

> Martin may cause the proper recordation of this Collateral Assignment and Security Interest and any Uniform Commercial Code filing to perfect Martin's collateral assignment and security interest.

*Id.* Acting on the language of the Assignment, Turner filed a UCC-1 financing statement on October 26, 2001 in order to perfect Martin's security interest in the Bayer proceeds. However, this financing statement expired on October 26, 2006 when Turner failed to file the necessary UCC-3 continuation statement within the requisite five years.

On June 24, 2005, PDI obtained a verdict against Bayer for $12.5 million. Unsatisfied with the outcome, both parties appealed the award, which was later affirmed-plus interest-by the Third Circuit Court of Appeals in 2009. During the appeal, PDI acquired investors in order to fund its legal fees by establishing the "Bayer Litigation

Fund" ("Litigation Fund"). The Litigation Fund attracted investors because they would receive their share of proceeds as a part of the attorney's fees due to PDI's counsel.

Once the award was finalized, the funds were dispersed in October 2009 to June 2010 in the following order: (1) attorneys fees, which included the Litigation Fund investors, (2) amounts owed to the government, and (3) other secured creditors in order of priority. Martin did not receive any funds. PDI concluded that Martin's security interest was unperfected due to his failure to file a UCC-3 financing statement after the expiration of the initial financing statement, and, therefore, disbursed the remaining funds to creditors with higher priority than Martin. In turn, Martin filed a malpractice case against his attorney, Turner, for causing his security interest to have lapsed. Martin ultimately reached a settlement with Turner, and Turner's malpractice carrier West Chester Fire Insurance Company, for Turner's policy limit of $1 million in 2011. The settlement required that Martin assign his claim from the Bayer litigation to his insurance company which established the entity WFIC ("plaintiff") for the sole purpose of receiving the assignment. The assignment covered "any and all rights, claims and causes of action (based upon tort, contract, violation of statute, or otherwise) which Martin has or may have with regard to the PDI Loan Documents and the Bayer Lawsuit Proceeds, and against all persons and entities responsible for or involved in the distribution of the Bayer Lawsuit Proceeds and against all persons and entities who received any of the Bayer Lawsuit Proceeds (collectively, the "Assigned Claims") all WITHOUT RECOURSE to

Assignor." McKissock Brief for Bifurcated Trial, Ex. 2. WFIC has brought this suit in order to receive a portion of the Bayer proceeds WFIC alleges it is entitled to arising out of the Assignment and which were paid to the various defendants in this case.

Pursuant to a request by the court appointed special master, Peter F. Vaira, Esquire, the parties submitted additional briefs on three bifurcated issues: (1) whether Larry Martin ("Martin") perfected a security interest in the proceeds of the Bayer litigation and if so, was that security interest superior to all other security interests in the proceeds of the Bayer litigation at the time it was perfected; (2) If the answer to question 1 is yes, whether that security interest thereafter continued to be superior to all other security interests in the proceeds of the Bayer litigation; and (3) whether, the assignment of Martin's rights to the proceeds of the Bayer litigation from Martin to WFIC was a valid assignment capable of being enforced by the court. Court order (Aug, 19, 2013).

## DISCUSSION

In order to determine the first issue — whether Martin had a perfected security interest in the proceeds of the Bayer litigation — the court must analyze whether Martin's interest was automatically perfected in 2001. "Perfecting" a security interest is a vital step in collecting from a debtor because it has the effect of establishing and protecting the priority of the lender. *See* 13 Pa. C.S. §9322(a); *see also Dollar Bank v. Swartz*, 657 A.2d 1242, 1244 (Pa. 1995). In order to perfect a security interest one must file a financing statement, unless an exception applies. For example, a security interest may be able to avoid the filing

requirements if it: (1) falls within the category of "payment intangibles" and (2) it is automatically perfected, 13 Pa. C.S. §9309(2). In the case at hand, Martin's attorney filed the UCC-1 financing statement in 2001, but failed to file the subsequent UCC-3 continuation statement in 2006. This failure caused the original UCC-1 financing statement to lapse, and left Martin with an unperfected security interest subordinate to other creditors. *See* 13 Pa.C.S.A. §9515(c). However, Martin's security interest in the Bayer proceeds would have remained perfected if it met the exception of constituting as a "payment intangible" that was automatically perfected at the time of Martin's 2001 UCC-1 filing.

As defined in 13 Pa. C.S. §9102, a "payment intangible" is a subset of "general intangible under which the account debtor's principal obligation is a monetary obligation."[7] The importance of the debt being facially monetary is reiterated in the comments:

> Virtually any intangible right could give rise to a right to payment of money once one hypothesizes, for example, that the account debtor is in breach of its obligation. The term "payment intangible," however, embraces only those general intangibles "under which the account debtor's *principal* obligation is a monetary obligation."

13 Pa.C.S.A. §9102 cmt. 5.d. (emphasis in original).

---

7. General intangibles is defined as "[a]ny personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction. The term includes payment intangibles and software." 13 Pa. C.S. §9102.

For reasons set forth below, this court rejects plaintiff's attempt to classify an assignment of an anticipated judgment resulting from a sale of defective goods as a payment intangible.

First, the terms of the contract between PDI and Bayer do not themselves create a payment intangible for PDI. PDI's contract with Bayer was for the sale of goods. Bayer's principal obligation was to provide PDI with machinery, and in consideration, PDI was to make payment on it. Ultimately, Bayer breached the contract by providing defective machinery. While this *may* give rise to a financial award, delivering faulty goods does not automatically convert Bayer's obligation into a primarily monetary one.

Second, and more importantly, PDI's assignment to Martin of the anticipated proceeds from PDI's lawsuit against Bayer is not a payment intangible either. The Pennsylvania Supreme Court previously confronted the issue of an assignment of anticipated proceeds in a condemnation lawsuit in which the court held it to be a general intangible; it would be entitled to priority, establishing its perfection, only after the filing of a financing statement. *See Sams v. Redevelopment Auth. of City of New Kensington*, 436 Pa. 524, 529, 261 A.2d 566, 568 (1970). "Courts uniformly hold that, under the UCC, proceeds of an anticipated recovery from an impending lawsuit constitute general intangibles," and consequently, "the proceeds of a resulting settlement agreement are also considered general intangibles." *First Am. Bank Valley v. George J. Hegstrom Co., Inc.*, 551 N.W.2d 288, 292 (N.D. 1996). Payment intangibles require an obligation, and the mere hope of receiving a favorable judgment does

not create one on its own. Indeed, the precise nature of the obligation is a crucial component:

> For a payment intangible to exist, there must be a "monetary obligation." When the debtors pledged to appellants their interest in potential settlement proceeds, the alleged tortfeasors had no obligation to pay debtors anything. At that point there had been neither a settlement nor a judgment....Until there is a contractual obligation to pay a judgment, a tort claim cannot be a payment intangible because the required "monetary obligation" is lacking.

*In re Cohen*, 305 B.R. 886, 904 (B.A.P. 9th Cir. 2004). Although that case involves a claim of personal injury, the court's rationale on the need for a then-existing obligation is directly on point to the case at hand.[8] WFIC's own description of Bayer's obligation at the time of assignment directly conflicts with this requirement when it described Bayer as, "the *prospective* judgment debtor in the Bayer Litigation" with a "*future* obligation to pay a judgment of money damages...." *See* plaintiff's Brief of Issues for First Hearing of Bifurcated Trial, at 9 (emphasis added). However, the assignment of a payment intangible requires a *current* debtor with an *existing* obligation. The mere likelihood that PDI would receive damages is insufficient. Bayer's obligation only materialized once the verdict was upheld in 2009. Until then, Bayer was not bound to pay PDI anything. Therefore, the lack of a monetary obligation at the time of the 2001 assignment precludes this court from categorizing the security interest as a payment

---

8. This court readily acknowledges that it is not bound by *In re Cohen*, but is incorporating its analysis due to a lack of relevant precedent in the Commonwealth of Pennsylvania.

intangible capable of being automatically perfected. As a result, Martin was required to file a UCC-3 continuation statement upon the expiration of the original financing statement in 2006, in order to maintain his priority and perfect his interest.

Based upon the foregoing, this court holds that Martin failed to renew a security interest in the anticipated proceeds of the Bayer litigation, and therefore the general intangible assigned to WFIC, LLC did not maintain priority over other defendants' security interests. Martin and his attorney did not file the necessary financing statement to prevent the interest from lapsing, and WFIC may not bypass those requirements by deeming its interest to be a payment intangible. In light of this decision, the court need not address the issue of whether Martin's assignment to WFIC was valid and enforceable by the court as it would have no bearing on the disbursement of funds.

## CONCLUSION

Based on the foregoing, WFIC is not entitled to any portion of the Bayer proceeds as it did not hold a superior perfected security interest over other secured creditors.

## ORDER

And now, this 7th day of November, 2013, it is hereby,

## ORDERED

that based upon a review of the submissions of the parties, WFIC, LLC did not have a perfected security interest in the proceeds of the Bayer litigation and therefore did not maintain priority as against other secured creditors.