In the Matter of HINSON AND HINSON, INC. d/b/a Western Sizzlin' Steak House of Bedford, Pennsylvania, Debtor.

Bankruptcy No. 86–43.

United States Bankruptcy Court, W.D. Pennsylvania.

July 17, 1986.

Richard J. Bedford, Somerset, Pa., for debtor.

David C. Klementik, Windber, Pa., for Golden Isles.

Mark A. Gregg, Johnstown, Pa., Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is a Motion To Abandon Property of the estate brought by Golden Isles Food Equipment Company (hereinafter "Golden Isles"), a creditor in this case. The Trustee has objected to this abandonment, alleging that Golden Isles' purchase money security interest in the subject property was improperly perfected, thereby subordinating its interest to that of the Trustee.

A hearing was held, at which time the parties submitted briefs. After additional research on the issue we have determined that the security interest claimed by Golden Isles was not validly perfected; therefore, the abandonment requested must be denied.

## FACTS

In the latter part of 1984, Joseph and Bernard Hinson, father and son, formed a Pennsylvania corporation, called Hinson and Hinson, Inc. The corporation filed a Fictitious Name Application on August 9, 1985, stating that Hinson and Hinson, Inc. would be doing business as Western Sizzlin' Steak House of Bedford, Pa. The corporate entity was created in order to obtain funding for the creation and operation of this restaurant facility. The restaurant building was completed in 1985.

In order to equip this restaurant facility, Hinson and Hinson, Inc., d/b/a Western Sizzlin' Steak House, entered into a Lease-purchase Agreement with Golden Isles. This Agreement called for a down payment of $10,000.00 and sixty (60) monthly installments of $2,970.00. At the conclusion of this five-year arrangement, Golden Isles

would turn over the title to the equipment to Hinson and Hinson, Inc. The signature on the Agreement appeared as follows:

LESSEE:

HINSON AND HINSON, INC. d/b/a WESTERN SIZZLIN' STEAK HOUSE

/s/ Bernard A. Hinson

Bernard A. Hinson, Vice-President

Golden Isles prepared Form UCC–1 Financing Statements in order to perfect its interest in the equipment. The financing statements listed the Debtor as:

Mr. Bernard Hinson

d/b/a Western Sizzlin Steak House

These financing statements were signed as follows:

/s/ Bernard A. Hinson

■ Nowhere on the financing statements does the corporation's name, Hinson and Hinson, Inc. appear. Neither does the signature reflect that Bernard Hinson executed the statement in his corporate capacity. The financing statement was filed in the Bedford County Prothonotary's Office and in the Office of the Secretary of the Commonwealth.[1] The financing statement was cross-referenced under Western Sizzlin' Steak House, but not under Hinson and Hinson, Inc.

Hinson and Hinson, Inc. paid the $10,000 down payment to Golden Isles, but paid no monthly installments. Hinson and Hinson, Inc. filed a Chapter 7 Petition in Bankruptcy on January 6, 1986. Thereafter, on January 13, 1986, Golden Isles filed this Motion to Abandon the equipment, as being burdensome to the estate. The Trustee has objected, alleging that Golden Isles is not a properly perfected secured creditor.

## ANALYSIS

The issue to be decided is whether the Form UCC–1 Financing Statements, filed on behalf of Golden Isles, were sufficiently correct in both their form and content so as to create a perfected security interest. The pertinent statutory language covering this issue is found at 13 Pa.C.S.A. § 9402, which states:

(a) **General rule.**—A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral ...

(g) **Sufficiency of name of the debtor.** —A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor, whether or not it adds other trade names or the names of partners ...

(h) **Effect of minor errors.**—A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

The importance of these sections lies in the effectiveness of the notice which the filing gives to a creditor searching the records to determine what, if any, encumbrances exists on specific items being considered by that creditor as collateral.

The Trustee argues that the following items *do not* comply with the notice requirements of the Uniform Commercial Code, as adopted in Pennsylvania; and, are not minor errors, but in fact are seriously misleading, thereby nullifying the perfection claimed:

---

**1.** The Trustee raises a preference issue in the filing of the Form UCC–1 with the State Authority. This issue was raised for the first time in the Trustee's brief and at the hearing on this matter. A preference action must be brought as an adversary proceeding, allowing opposing counsel an opportunity to respond. Golden Isles' counsel had no advance notice of this defense. As the appropriate action has not been filed, and as notice was not adequately given, we do not consider this issue at this time. However, it does appear that if we were to find in favor of Golden Isles on the instant matter, the Trustee's action in bringing such a Complaint would be well-founded. A review of § 547(b) leads this Court to believe that Golden Isles would lack a defense to such an action.

1) The name of the Debtor on the financing statement is Mr. Bernard Hinson d/b/a Western Sizzlin' Steak House; however the name of the Debtor in the security agreement and in this bankruptcy proceeding is Hinson and Hinson, Inc. d/b/a Western Sizzlin' Steak House.

2) The financing statement is signed by Bernard A. Hinson, as Debtor, with no indication of corporate capacity; whereas the signature on the security agreement shows Bernard A. Hinson as Vice President of Hinson and Hinson, Inc. d/b/a Western Sizzlin' Steak House.

A significant number of courts have discussed these issues with varying fact patterns which ultimately alter the outcomes.

In *In re Green Mill Inn, Inc.,* 474 F.2d 14, 12 U.C.C.Rep. 184 (9th Cir.1973), a security agreement was entered into which listed the debtor as Green Mill Inn, Inc. The financing statement listed the debtor as Taylor, Maxine, but was signed:

> Green Mill Inn, Inc., by Maxine Taylor, Pres.

The Court held that this was not a seriously misleading error because the signature showed corporate capacity, and the filing was cross-referenced under both the individual and the corporation names, thereby providing actual notice to anyone searching for a security interest given by the corporation.

In *In re McCauley's Reprographics, Inc.,* 638 F.2d 117 (9th Cir.1981), the Court was faced with a corporation which was originally a partnership, consisting of Mr. and Mrs. McCauley. Both the security agreement and the financing statement were in the partnership name, and the financing statement was signed by Mr. John McCauley, with no indication of corporate capacity. The difficulty arose because the corporation, not the partnership, was the debtor. The Court found the error to be seriously misleading, and presented the following rationale:

> When the name of the debtor has been erroneously listed on the financing statement, the dispositive question is usually whether or not a reasonable search under the debtor's true name would uncover the filing. If so, it is assumed that the searcher is on notice to inquire further to discover the correct identity of the debtor ...
>
> Since there was no indication on the financing statement that the debtor was the corporation rather than the partnership, the financing statement may not have given notice that the debtor could in fact have been the corporation.

*Id.* at 119. This case stressed that even though the names were the same, the partnership and corporation were different entities, each with its own legal status, and that the debt of one is not necessarily a debt of the other.

■ In *Matter of Glasco, Inc.,* 642 F.2d 793 (5th Cir.1981), the Court dealt with a financing statement which was indexed under a trade name rather than the corporate identity. The Court noted that all of the debtor's checks, stationery, bank accounts, contracts, etc. were in the trade name. In holding that the indexing was not seriously misleading, the Court determined that a reasonably prudent searcher would have searched the trade name. In the case at bar, no testimony was offered as to the indices listed above. Furthermore, this case must be distinguished, because the Uniform Commercial Code, as adopted in Pennsylvania, specifically requires the name of the debtor, stating that trade names are unnecessary. Logically, then, trade names alone are insufficient.

Similarly, in *In re Farm and Home Supply Co.,* 22 U.C.C.Rep. 1081 (Bktcy.W.D. Pa.1977), a partnership with a fictitious name entered into a security agreement and caused a financing statement to be filed. Later, the partnership incorporated, and entered into a new security agreement and financing statement, omitting the trade name. The Court held that the filing in the *corporate* name was sufficient; filing in the *trade* name was unnecessary.

In *Matter of Sounds Distributing Corp.,* 42 B.R. 274 (Bktcy.W.D.Pa.1984), this Court held that:

... the financing statements designating debtor as "Norton L. Kalinsky d/b/a Sounds Dist. Corp." and "Norton L. Kalinsky d/b/a Sounds Distributors" were not seriously misleading to those creditors in search of encumbrances of "Sounds Distributing Corporation".

*Id.* at 276.

The case at bar is significantly different in that the trade name and the corporate name bear absolutely no resemblance to one another, whereas in *Sounds, supra,* the trade and corporate names were effectively identical, thereby giving a searching creditor sufficient notice of the security interest.

In *In re Marta Group, Inc.,* 33 B.R. 634 (Bktcy.E.D.Pa.1983), a corporation for profit, Marta Group of Pa., entered into a security agreement and executed a financing statement which was appropriately filed. Within five (5) years the corporation changed its name to Marta Group, Inc., and its status to that of a non-profit corporation. When the time arose for the finance company to file a Continuation Statement, it did so, without changing the corporate name or status. In holding that the Continuation Statement did not protect the creditor's perfection of its security interest, the Court said:

> Section 9402(a) requires that the "name of the debtor appear on the financing statement". This requires the name the debtor bore at the time the financing statement was signed ... The creditor must be sufficiently diligent to insure that the name on the financing statement is correct at the time the statement is signed.

*Id.* at 639.

In the case at bar, the financing statements were presented for signature simultaneously with the security agreement. Golden Isles was therefore charged with the knowledge that the Debtor's name on the security agreement was not the same as the Debtor's name on the financing statements.

Golden Isles directs the Court's attention to the case of *In re Platt,* 257 F.Supp. 478 (E.D.Pa.1966), as being on point to our discussion. We disagree. In *Platt, supra,* the Court found that a financing statement indexed under Platt Fur Company would not be seriously misleading to the creditors of Henry Platt, the debtor. This case is distinguished from the case at bar, because Platt Fur Company was a trade name for Henry Platt's business, not a duly formed corporation, having its own identity.

■ The Court believes that the Seventh Circuit's decision in *Matter of Lintz West Side Lumber, Inc.,* 655 F.2d 786 (7th Cir. 1981) is more appropriately aligned to the instant case. In *Lintz, supra,* the corporation was indebted to a bank. The bank obtained a security interest in property of the corporation, and prepared the necessary financing statement. However, the statement listed the individuals, John and Mayella Lintz, as the debtors. These financing statements were filed in both county and the state, as required. In finding that these financing statements were insufficient to achieve the necessary perfection of the security interest, the Seventh Circuit stated:

> As a duly constituted corporation, Lintz West Side Lumber, Inc., is a legal entity separate and distinct from John and Mayella Lintz (whose names appear on the financing statements). A creditor would ordinarily, and could reasonably assume that *corporate* assets would not be encumbered by a security interest filed under the names of these individuals despite the similarity in the names.

*Id.* at 791.

Golden Isles argues that *Lintz* is distinguishable because in that case, a search could only be done by an employee of the records office, and if that employee was requested to search for financing statements of a corporation, he would look only for those items found under the corporate name. In contradistinction, the records in Bedford County, Pennsylvania are available for the secured creditor's perusal; Golden Isles asserts that a reasonable searcher would investigate both the corpo-

rate and individual names. If the filing system were such that the individual and corporate listings were mingled together, causing a searcher of Hinson and Hinson, Inc. to find an entry for Hinson, Bernard, we *might* agree that a reasonably prudent searcher would be on notice to inquire further. However, the Bedford County indexing system separates individual and corporate entries and places them on different pages. Therefore, in searching the corporate page for Hinson and Hinson, Inc., the individual would find no listing for Hinson, Bernard. Additionally, even if the search did produce the "Hinson, Bernard" entry, we question whether a reasonably prudent searcher would find it appropriate to inquire further, since the corporation has rights and obligations which do not inure to the individual.

Finally, Golden Isles alleges that no creditors have in fact been misled by these filings, and that the only objector is the Trustee. The Seventh Circuit in *Lintz, supra,* also addressed this issue by stating:

> Section 70(c) of the Bankruptcy Act clothes the trustee with the "status of an ideal, imaginary creditor, irreproachable and without notice, and arms him with every conceivable right and power which under the applicable state law would be available to the most favored creditor who might have acquired a lien on the bankrupt's property by legal or equitable proceedings".

655 F.2d at 792 (quoting Collier Bankruptcy Manual, Trustees and Receivers in Bankruptcy Handbook, § 13.–001).

This identification of the Trustee as a hypothetical bona fide lien creditor without notice was carried over from the Bankruptcy Act to the Bankruptcy Code. *See* 11 U.S.C. § 544(a). The Trustee, therefore, stands as a lien creditor who would find no perfected security interest binding this equipment, would have no knowledge of the attempted perfection, and as a result thereof, would be seriously misled.

■ The Court is aware that Golden Isles is now placed in the unsavory position of being a general unsecured creditor, and

as such, this is indeed a harsh result. However, if this Court is to follow the Uniform Commercial Code, as adopted in Pennsylvania, and the Bankruptcy Code, it is the result we are bound to reach. The secured creditor, as maker of the perfecting documents, is charged with the responsibility for their compliance. Therefore, any deviation which causes these documents to be seriously misleading is the burden of the creditor to bear.