614 So.2d 1198 (1993)
FLANIGAN'S ENTERPRISES, INC., Appellant,
v.
BARNETT BANK OF NAPLES, et al., Appellees.
No. 92-104.
District Court of Appeal of Florida, Fifth District.
March 5, 1993.
*1199 Richard E. Whitaker of Maguire, Voorhis & Wells, P.A., Orlando, for appellant.
Tucker H. Byrd of Winderweedle, Haines, Ward & Woodman, P.A., for appellee Barnett Bank of Naples.
PER CURIAM.
Flanigan's Enterprises, Inc. appeals from a final judgment which held it was estopped to seek damages against Barnett Bank of Naples and Barnett cross-appeals from the trial court's initial determination that it could have been held liable to Flanigan's pursuant to section 818.01, Florida Statutes (1983). That section is a criminal statute which prohibits the sale of personal property subject to a lien without the consent of the lienholder. Flanigan's held an unperfected security interest in a liquor license and belatedly asserted a superior statutory landlord's lien pursuant to section 83.08(2), Florida Statutes (1977). Barnett had a perfected security interest in the license, and after default, pursued its remedies under the Uniform Commercial Code and Chapter 561, Florida Statutes, to foreclose on the license and sell it to a third party. We affirm for two reasons: the record adequately supports the trial court's finding of estoppel, and we also think that section 818.01 provides no basis to assert civil liability against Barnett.
The record in this case is complicated and in dispute. Where there was conflict in the evidence, we resolve it in Barnett's favor, as the trial court obviously did.
In 1973, Flanigan's leased a liquor lounge on South Orange Blossom Trail in Orlando, Florida, on a long-term basis. It subleased the lounge and sold its liquor license to Level 3 in 1978. Level 3 changed its name to Spirits Orlando South, Inc.
*1200 Spirits pledged its equipment and furnishings to Barnett in 1983, for a loan made to a related corporation, and entered into a security agreement covering its liquor license for the premises. Barnett checked the U.C.C. filings in Tallahassee, and checked with the Beverage Department for prior liens on the license. Finding none, Barnett perfected its security interest by filing with the Secretary of State and with the Florida Beverage Department.
While working on the documentation for its loan to Spirits, Barnett's attorney sent Flanigan's a letter requesting that it waive any landlord's lien it might have on Spirit's equipment and furnishings in the Orlando lounge. Flanigan's attorney declined. When asked at trial why Barnett did not also seek a waiver of its landlord's lien on the liquor license, the attorney testified he had no idea that a liquor license could be encumbered by a landlord's lien for rent, absent a filing with the Beverage Department and/or the Secretary of State, pursuant to the U.C.C.
In early 1984, the Barnett loan went into default and in June, Spirits ceased paying rent to Flanigan's. Spirits surrendered the liquor license to Barnett, and Barnett proceeded to have it escrowed with the Department in July of 1984, so that it could be sold to a third party, pursuant to Chapter 561. On October 10, 1984, Barnett sold the license to Hickory Point Industries, Inc. It applied the $105,000 proceeds it received to reduce a much larger indebtedness.
Hickory Point filed for Chapter 11 bankruptcy protection, nineteen days after it paid Barnett. Apparently, Flanigan's has not been able to collect its past due rent owed by Spirits, nor has it been able to assert its landlord's lien against the liquor license in the context of the bankruptcy proceedings. Flanigan's claims in this lawsuit that Barnett's sale of the license to Hickory Point and the subsequent bankruptcy completely destroyed its landlord's lien. For purposes of this opinion, we assume Flanigan's assertions of complete loss are true.
After Barnett contracted with Hickory Point to sell the liquor license, the attorney for Barnett, McMackin, received a telephone call from Flanigan's attorney, Kastner. Kastner first asserted Flanigan's had a perfected security interest in the liquor license, created by the sublease. However, Kastner admitted to McMackin that Flanigan's had failed to file or record any U.C.C. documents, and it filed no notice with the Beverage Department. Kastner then offered to buy the license from Barnett for $95,000.
Knowing that a higher contract with Hickory Point had not yet closed, McMackin said he would tell Barnett of the offer and get back with Kastner. He told Barnett about Flanigan's offer, but he did not call Kastner back prior to the sale to Hickory Point. But Kastner never asserted a superior landlord's lien on the license until after the sale to Hickory was consummated.
McMackin testified that had Flanigan's asserted a superior lien on the liquor license prior to the sale to Hickory Point, he would have dealt with the claim and tried to work it out. He would not have proceeded with the sale to Hickory Point. There was no evidence, or even a suggestion, that Barnett (or any of its agents) knew about Hickory Point's impending bankruptcy, and its potential effect on Flanigan's statutory landlord's lien claim against the license.

I. ESTOPPEL
It is well established that when estoppel is raised as a defense, the burden of proof is on the party asserting it. Ennis v. Warm Mineral Springs, Inc., 203 So.2d 514 (Fla. 2d DCA 1967). The silence or inaction by one party does not constitute an estoppel unless the other party has access to knowledge or facts not available to the first. Pelican Island Property Owner's Association, Inc. v. Murphy, 554 So.2d 1179 (Fla. 2d DCA 1989). However, in this case, the record sufficiently supports the trial judge's conclusions that Flanigan's sole assertion of an unperfected security interest when faced with Barnett's perfected security interest, was inconsistent with its later claim to have a prior statutory lien on the license. Had this claim been timely *1201 asserted, Barnett would not have sold the license to Hickory Point and the loss of Flanigan's lien following the sale could have been avoided.

II. APPLICABILITY OF SECTION 818.01.
Section 818.01 is a very old statute, having first appeared in 1893. But it has continued through revisions in 1906, 1920, 1922 and 1971. Subsection (1) makes it a criminal misdemeanor to:
[p]ledge, mortgage, sell or otherwise dispose of any personal property to him belonging, or which shall be in his possession, and which shall be subject to any written lien, or which shall be subject to any statutory lien, whether written or not, or which shall be the subject of any written conditional sales contract under which the title is retained by the vendor, without the written consent of the person holding such lien, or retaining such title ...
Admittedly, Barnett did not obtain Flanigan's consent to its sale of the license to Hickory Point.
Barnett argues in its cross-appeal that section 818.01 applies only to tangible personal property, and not to intangible personal property, such as a liquor license. A liquor license is a special form of general intangible property in Florida.[1] Pursuant to section 679.106, "general intangible" means "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money." Clearly a general intangible such as a liquor license cannot be seen or handled and it has no substance, body or location. It is similar to those bundles of rights that make up a franchise, a copyright or an annuity. See C.J.S. Property § 15 (1983).
However, the language of section 818.01 is not expressly limited to tangible, as opposed to intangible, personal property. It prohibits disposing of "any personal property to him belonging, or which shall be in his possession ..." (emphasis added). As Flanigan's points out "personal property" is the more general term which encompasses both tangible and intangible personal property. Black's Law Dictionary 1096 (5th ed. 1979). In its choice of words, the courts presume the Legislature intended the plain meaning of those used in legislation. Baskerville-Donovan Enter., Inc. v. Pensacola Exec. House Condo. Assoc., 581 So.2d 1301 (Fla. 1991); Shelby Mutual Ins. Co. of Shelby, Ohio v. Smith, 556 So.2d 393 (Fla. 1990). Although all of the cases involving section 818.01, which we have found or which have been cited to us, concerned tangible personal property,[2] we cannot conclude that intangible or other kinds of personal property, such as instruments and chattel paper,[3] were intended to be excluded. See Hayes v. Jones, 147 Fla. 238, 2 So.2d 588 (Fla. 1941).
Barnett also argues that section 818.01 should not be applied in the context of sales of collateral by either inferior or superior lienholders where such sales are permitted by the panoply of remedies afforded by the U.C.C.,[4]or other laws.[5] Other appellate courts of this state have rejected this argument. In Ford Motor Credit Co. v. Hanus, the fourth district held that a purchaser of a truck at a sheriff's sale (the levying judgment creditor) was liable under section 818.01 to the secured creditor whose lien was duly noted on the title, *1202 when a third party to whom the creditor resold the truck vanished and absconded with the collateral.
Similarly, in Littman v. Commercial Bank & Trust Co., the third district held that the purchaser of a forklift at a sale by an inferior secured creditor, was liable to the superior lienor for the full amount of the superior lien, even though the sale was expressly subject to the superior lien, when the purchasing creditor resold the forklift to a third party who vanished and absconded with the collateral. The Littman court expressly held that section 818.01 had not been impliedly repealed by section 679.311 or any other remedy provision encompassed in the U.C.C. because no conflict between the statutes exists.
With that conclusion we respectfully disagree. For example, section 679.504 provides that after default, a secured creditor has the right to sell or dispose of the collateral, provided the conditions of the statute are met. One of the conditions is not obtaining the written consent of any other party who has a security interest as Littman holds section 818.01 still requires. Rather, section 679.504(3) provides that such additional secured parties who have filed financing statements indexed in the name of the debtor in this state must be given reasonable notice of the intended sale or disposition. Thereafter, the selling secured party may protect its interest by buying the collateral at the public or private sale.
It appears to us that section 679.504(3) cannot be reconciled with section 818.01 in the context of sales of collateral by secured creditors. Section 679.504(3) provides only that other secured parties who have duly filed financing statements indexed in the name of the debtor in this state must be given reasonable notice of an intended sale or disposition. It is then incumbent upon the notified secured creditor to act to protect its interests. If the secured creditor has a prior lien or security interest, it can elect to permit the sale to go forward, subject to its superior interest. See Coney v. First State Bank of Miami, 405 So.2d 257 (Fla. 3d DCA 1981). If the secured creditor has an inferior priority position, it is on notice it must act to protect its interests, or suffer the consequences.
Section 679.504(3) also contemplates that in most cases the secured creditor has the right to protect its interest in the collateral by purchasing it at the public sale, or at a private sale, if there is a recognized market or established market price for the collateral. Obviously, this right would do the secured creditor little good if it then had to obtain the written consent of any superior or inferior secured party before it could sell the collateral to a third party. In sum, we think the U.C.C. and other similar statutes which govern in a comprehensive way the disposition of collateral by secured parties, have impliedly repealed any written consent requirement of section 818.01, whether the complaining party holds an inferior or superior lien.
There was no evidence or suggestion in this case that Barnett intended to act in a manner that would result in Flanigan's loss of its rights in the collateral, or that Barnett's exercise of its rights to dispose of the collateral after default was wrongful. Compare, e.g., Black, Starr & Frost v. Prestige Finance (Debtor wrongfully sold personal property free from secured creditor's lien held liable under section 818.01). Section 818.01 may have some remaining impact in cases involving wrongful disposition of collateral by debtors and/or secured creditors seeking to destroy or evade the rights of other secured creditors, where the provisions of section 679.504 (or a like statute governing disposition of specific kinds of collateral) are not followed. However, as in this case, where the statute allowing disposition and sale of collateral by a secured creditor is followed, section 818.01 affords no basis for civil or criminal liability against a secured creditor who disposes of collateral, purchases it at the sale, and later sells it to a third party, simply because written consent from another secured creditor or lienor was not obtained. We acknowledge conflict with Ford Motor Credit Co. v. Hanus and Littman v. Commercial Bank & Trust Co.
AFFIRMED.
*1203 GOSHORN, C.J., and GRIFFIN, J., concur.
W. SHARP, J., concurs and concurs specially with opinion.
W. SHARP, Judge, concurring specially.

STATUTORY LANDLORD LIEN
In my view there is an additional reason this case should be affirmed. I do not think the statutory landlord's lien for rent created by section 83.08(2) attaches to a lessee's interest in a liquor license, which is a general intangible. In my view, the statutory landlord's lien for rent only attaches to tangible personal property which can be "brought onto and off the leased premises" or is generally "kept" there as specified by the statute. See Mathias v. Walling, 609 So.2d 1323, 1328 (Fla. 5th DCA 1992) (Sharp, W., J., concurring specially).
At the time the sublease to Level 3 was executed in 1978, in order to "perfect" an interest in a general intangible (such as a liquor license), it was necessary to file with the Secretary of State in Tallahassee pursuant to the U.C.C. In re Coed Shop, Inc., 435 F. Supp. 472 (N.D.Fla. 1977). Barnett made such a filing. Flanigan's failed to do so.
Because the sublease to Level 3 in this case commenced in 1978, the landlord's lien or security interest created by it is not controlled by revised section 561.65. See Sachs v. Curry-Thomas Hardware, Inc., 464 So.2d 597 (Fla. 1st DCA 1985); Brown v. St. Department of Business Regulations, 432 So.2d 91 (Fla. 4th DCA 1983). The revised statute now requires filing with the Beverage Department exclusively and not with the Secretary of State. See United States v. McGurn, 596 So.2d 1038 (Fla. 1992). But the statute also provides that it does not apply to liens or security interests which were created before July 1, 1981. In any event, Barnett, whose security interest arose in 1983, filed timely with the Beverage Department pursuant to the revised statute. Flanigan's failed to file there at any time.
Thus, in my view, Flanigan's is entitled to no remedy against Barnett in this case because of the reasons explained in I and II above, and also because it had no statutory landlord lien on the liquor license. Thus it had nothing that could have been destroyed by the sale to Hickory Point and its subsequent bankruptcy. At best, Flanigan's had an unperfected security interest in the license, created by the provisions of its sublease to Spirits. No notice to Flanigan's by Barnett was required by the U.C.C. or Chapter 561. Upon Spirit's default, Barnett had every right to dispose of, buy, and later sell the liquor license to a third party as it did in this case.
NOTES
[1] See United States v. McGurn, 596 So.2d 1038, 1041 (Fla. 1992) ("We emphasize that a liquor license is not like other `general intangibles' because it is issued as a matter of privilege, not as a matter of right, by the government and the government has total control of its use.").
[2] See, e.g., Hayes v. Jones, 147 Fla. 238, 2 So.2d 588 (Fla. 1941) (wearing apparel); Mills v. State, 51 So. 278 (Fla. 1910) (agricultural crops or farm products); Black, Starr & Frost v. Prestige Finance, 579 So.2d 297 (Fla. 4th DCA 1991) (tangible goods sold at retail); Ford Motor Credit Co. v. Hanus, 491 So.2d 570 (Fla. 4th DCA 1986) (truck); Littman v. Commercial Bank & Trust Co., 425 So.2d 636 (Fla. 3d DCA 1983) (forklift); Rosenberg v. Ryder Leasing, Inc., 168 So.2d 678 (Fla. 3d DCA 1964) (power brake).
[3] § 679.105.
[4] See, e.g. § 679.504.
[5] See, e.g., § 561.65.