In re CUSTOM COALS
LAUREL, Debtor.

U.S. Bank f/k/a United States National
Bank in Johnstown, Movant,

v.

Custom Coals Laurel, Utica Mutual Insurance Company, NSM–Anglo–Holdings Corp., Tanoma Coal Sales, Inc., and Paul F. Glenn Revocable Trust, Respondents.

Bankruptcy No. 97–23405 JKF.
Motion No. GEC–1.

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 13, 2001.

Gilbert E. Caroff, Johnstown, PA, Eric Sobkiewicz, Pittsburgh, PA, for U.S. Bank.

Robert G. Sable, Mark E. Freedlander, David I. Swan, Pittsburgh, PA, for Debtor.

Bradley J. Stevens, Phoenix, AZ, for Paul F. Glenn Revocable Trust.

Edmund M. Carney, Steven Petrikis, Pittsburgh, PA, for Tanoma Coal Sales, Inc.

Richard A. Pollard, Pittsburgh, PA, Jacqueline M. Kelleher, Plattsburgh, NY, for Utica Mutual Insurance Company.

Douglas R.M. Nazarian, David P. King, Baltimore, MD, T. Lawrence Palmer, Wexford, PA, for NSM–Anglo–Holdings Corp.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

The matter before the court is U.S. Bank's Motion for Relief from the Automatic Stay under § 362(d)(2) to enforce its rights as a secured creditor with a perfected interest in annuities owned by Debtor and held by Utica Mutual Insurance Company ("Utica Mutual"). The Respondents assert that U.S. Bank is not properly perfected and that each of the creditor Respondents is. Respondents assert that (1) an annuity is not a general intangible and so U.S. Bank's interest cannot be perfect-

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

ed under the Uniform Commercial Code ("UCC") by filing a financing statement; and (2) annuities are either insurance policies (which are not subject to the UCC) or instruments. Utica Mutual asserts that because a security interest in annuities cannot be perfected by filing, it, as assignee of the Debtor's interest in the annuities, has priority over U.S. Bank's security interest. Alternatively, Utica Mutual argues that if perfection in an annuity is achieved by filing a financing statement, U.S. Bank is not perfected because including the annuities in the term "general intangibles" in the financing statement is not a sufficient description of the property. Utica Mutual also asserts that it has a right of setoff with respect to the annuities.[2] If U.S. Bank is properly perfected, it is first in time.

The Paul F. Glenn Revocable Trust ("Glenn Trust"), asserting that it has a perfected security interest against the annuities, likewise challenges U.S. Bank's perfected status in light of Debtor's change of name.[3] The Glenn Trust also argues that a later financing statement filed by U.S. Bank after Debtor's name changed is seriously misleading and U.S. Bank is not perfected for that reason as well.[4]

Tanoma Coal Sales, Inc. ("Tanoma") and NSM–Anglo–Holdings Corp. ("NSM") also filed financing statements, albeit after U.S. Bank did. Tanoma's financing statement refers to

> All Debtor's property located on its real estate ... whether now owned or hereafter acquired, together with all accessions thereto and all substitutions, re-

placements, attachments and accessories relating thereto and all cash and non-cash proceeds of all of the foregoing which collateral includes, but is not limited to, ... intangible property .... Proceeds hereunder include whatever is now or hereafter received by debtor upon the sale, exchange, collection or other disposition of any item of collateral, whether such proceeds constitute ... general intangibles, instruments ....

Objections and Response of Tanoma Coal Sales, Inc. to U.S. Bank's Motion for Relief from the Automatic Stay ("Tanoma's Response") at ¶ 7. Tanoma's financing statement, however, is in the nature of a fixture filing and, to the extent the annuities are general intangibles, Tanoma would only be secured in them if they were proceeds of property located on Debtor's real estate. There are no facts alleged to support the proposition that the annuities are proceeds of such property. Furthermore, as were the other Respondents' financing statements, Tanoma's financing statement was filed after U.S. Bank's. Tanoma asserts that U.S. Bank is not properly perfected.

NSM adopted Tanoma's Response and Brief and asserts that U.S. Bank has no interest in the annuities because they were part of property "used or useful in the operation of Debtors' [sic] property on the real estate". Tanoma's Response at ¶ 8. NSM's financing statement of August, 1994, refers to "[a]ll fixtures, ... and other articles of property now or at any time hereafter attached to or situated in or upon, and used or useful in the operation of the Real Estate or the building and

---

**2.** Debtor asserts, *inter alia,* that this action must be brought as an adversary proceeding because lien validity and priority are asserted. However, U.S. Bank is not challenging anyone's lien priority in its motion; it is merely asking for relief from stay on the basis that it has the first perfected lien in the annuities and is otherwise entitled to relief from stay. The responses assert that U.S. Bank is not perfected but such an assertion does not convert a motion for relief from stay to an adversary proceeding, although in the course of adjudicating the issues raised the court may

employ the adversary proceeding rules. *See* Fed.R.Bankr.P. 9014.

**3.** The Glenn Trust asserted that it properly perfected its interest. Even if properly perfected, the Glenn Trust is last in line as it filed its financing statement last in time.

**4.** Debtor's name changed on or about June 19, 1996, from Custom Coals International to Custom Coals Laurel. Stipulation at ¶ 27.

improvements ... or of any business ... operated by the owner or any occupant ....” *See* Motion for Relief from Stay at ¶ 19. Other parties argue that the language cannot be stretched to include the annuities. We agree. They are not “articles of property ... attached to or situated in or upon ... the Real Estate”. They are not used in the operation of Debtor's property on the real estate.

For the reasons which follow, we hold that the annuities are general intangibles, U.S. Bank is properly perfected and is first in time and right with respect to the competing interests in the annuities.

### Facts

The parties stipulated to, *inter alia,* the following: On February 22, 1994, Debtor purchased the Utica National Life Insurance Company annuity. *See* Stipulations Relating to Movant's Request for Relief from Stay (“Stipulations”), Dkt. No. 542, at Exhibit 6. On February 25, 1994, Debtor purchased the Security–Connecticut an-

nuity.[5] On March 9, 1994, U.S. Bank's predecessor in interest made available to Debtor (then known as “Custom Coals International”) a $1,000,000 line of credit.[6] On the same day, to secure the obligation, Debtor granted U.S. Bank a security interest in accounts receivable, chattel paper and general intangibles. However, on September 30, 1993, prior to the credit line being opened, U.S. Bank filed financing statements with the Secretary of the Commonwealth of Pennsylvania and with the Prothonotary of Allegheny County, Pennsylvania.[7] The financing statements covered, *inter alia,* general intangibles. On June 1, 1994, Utica Mutual issued two bonds to the Pennsylvania Department of Environmental Protection (DEP). In connection with these bonds Debtor and several of its affiliates delivered to Utica Mutual a General Agreement of Indemnity dated June 1, 1994. Debtor assigned the annuities to Utica Mutual on March 17, 1995.[8]

**5.** The annuitant named in both annuities is Sheldon Wool, a stockholder in Debtor. Debtor is named as the owner and beneficiary of both annuities. The annuities were purchased by Debtor to secure Utica Mutual's liability for environmental bonds Utica Mutual issued to the Pennsylvania Department of Environmental Protection. Debtor, its affiliates, and related entities also executed a General Agreement of Indemnity with Utica Mutual. *See* Debtor's Memorandum of Law in Opposition to Motion for Relief From Stay by U.S. Bank f/k/a United States Bank in Johnstown, Dkt. No. 543 at 2–3.

**6.** In January of 1996 the loan agreement was modified. *See* Stipulations at ¶ 4 and Exhibit 5 thereto.

**7.** U.S. Bank initially asserted that those Respondents who did not file their financing statements in Allegheny County are not perfected inasmuch as Debtor's principal place of business is in Allegheny County. However, the parties stipulated that Debtor had places of business in more than one county. *See* Stipulations at ¶ 39 and U.S. Bank's Brief in Support of its Motion for Relief from Stay at 2. NSM, Tanoma, and the Glenn Trust filed with the Commonwealth and in Somerset County. The place of filing of the financing statements is not an issue.

**8.** The assignment of the Security–Connecticut annuity provided that the interest in the policy was transferred “subject to the conditions of said policy, and to any existing indebtedness to Security–Connecticut Life Insurance Company on account of or secured by said policy.” Stipulation, Exhibit 10. The assignment of the Utica National policy provided that the policy was transferred and that “the following specific rights are included in the assignment and pass by virtue hereof: 1. The sole right to collect from the Insurer the net proceeds of the Policy, but only to the extent of the outstanding amount of any Liabilities, as described in Paragraph D hereof, existing between the Insured or Owner and the Assignee.” Stipulation, Exhibit 11 at ¶ B.1. Paragraph D of Exhibit 11 provides that “This assignment is made and the Policy is to be held as collateral security for ..., and all liabilities of the Insured or Owner, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between the Insured or Owner and the Assignee....” Utica Mutual obtained an assignment of *inter alia,* net proceeds of the Utica National annuity.

For purposes of this Memorandum Opinion, any difference between assignment of the “policy” or of the “net proceeds” is immaterial because we find that U.S. Bank holds the first position, prior perfected security interest.

## Annuities as General Intangibles

▉ The court finds that the annuities are general intangibles and an interest in the annuities is subject to perfection under the UCC. This finding fits within the 1972 comments to § 9106 which informs that there are "miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security." Comment to 13 Pa.Cons.Stat.Ann. § 9106. Annuities are not insurance policies, although they have some of the same attributes.[9] Black's Law Dictionary defines "insurance" as a contract whereby one party undertakes to compensate another for a specified loss or losses. BLACK'S LAW DICTIONARY 802 (6th ed.1990). An annuity is defined as the right to receive fixed periodic payments, either for life or for a term of years. *Id.* at 90. *See also Unisys Corp. v. Pa. Life and Health Ins.*

*Guaranty Assn.*, 667 A.2d 1199, 1202 (Pa. Cmwlth.1995), *aff'd* 546 Pa. 256, 684 A.2d 546 (1996), citing *In re Dwight's Estate*, 389 Pa. 520, 134 A.2d 45, 48 (1957)(an annuity designates "a right ... to receive fixed, periodical payments .... Its determining characteristic is that the annuitant has an interest only in the payments themselves and not in any principal fund or source from which they may be derived"). An insurance policy will pay a specified sum on the occurrence of a specified event. A beneficiary of an insurance policy receives the principal fund. An annuity does not guarantee return of principal and, in that sense, bears characteristics of financial investments with different risk factors than insurance. Although insurance companies are permitted to issue annuities, that fact does not render annuities insurance policies any more than annuities issued by banks are bank deposits. Annui-

---

9. In its Response to Motion for Relief from Stay Filed on Behalf of Utica Mutual Insurance Company ("Response of Utica Mutual"), Utica Mutual cites Opinions of the Pennsylvania Attorney General, Pennsylvania statutes and the Pennsylvania Code in support of its assertion that annuities are policies of insurance. Therefore, Utica Mutual contends, the annuities are not subject to perfection by filing under the UCC. *See* Response of Utica Mutual and its Brief in Opposition to U.S. Bank's Motion for Relief from the Automatic Stay. However, the authorities cited by Utica Mutual refer to annuities in the context of the regulation of insurance companies and banks. That is, annuities can be issued and sold by those entities, assuming proper licensing. *Cf. NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995). The cases do not address how one perfects an interest in annuities.

Moreover, a learned treatise succinctly summarizes the differences between annuities and insurance contracts:

"An annuity contract differs materially from an ordinary life insurance contract in that it is payable during the life of the annuitant rather than upon any future contingency, and in many instances it is paid for in a single payment which is not generally regarded as a premium. Annuities are not ordinarily considered to be 'insurance' for that reason, except that, where sold by a company otherwise in the insurance busi-

ness, statutes may classify annuity contracts as insurance contracts for purposes of taxing the company which sells them. Also, statute may provide payment guarantee protection for annuity payments due from insolvent insurer even though an annuity is not considered an insurance contract. Consequently, a company engaged in selling annuities is not for that reason alone subject to a statute applicable to 'insurers' unless the statute expressly so declares, and an annuity contract is not a 'policy of insurance' within the meaning of a statute requiring the filing of forms of such policies for the approval of the state insurance commissioner."

"Variable annuity contracts are subject to regulation by the Federal Government, on the theory that they are not insurance and therefore do not come within the excluding provisions of the McCarran–Ferguson Act. Similarly, a 'Flexible Fund' annuity contract may, after appropriate analysis, be found to be an 'investment contract' within the terms of the Securities Act (15 U.S.C.A. § 77b(I))".

"In consequence of the fact that annuities are not ordinarily regarded as insurance, it naturally follows that most litigation involving annuities does not present any aspect of what would ordinarily be regarded as insurance law. The subject of annuities is thus not treated in detail in this text."

I Couch on Insurance § I:22 (3d ed. June, 2000)(footnotes omitted).

ties are not insurance policies.[10]

In addition, the annuities are not "deposit accounts" under the UCC as asserted by Tanoma. Section 9105(a) of the UCC defines deposit account as "[a] demand, time, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization, other than an account evidenced by a certificate of deposit." The annuities are not demand accounts but are payable at certain times in accordance with the contract.

We also find that the annuities are not instruments. An instrument is defined in the UCC as a negotiable instrument. 13 Pa.Cons.Stat.Ann. § 3104(b)("instrument means a 'negotiable instrument' "). "Negotiable instrument" is defined as an "unconditional promise ... to pay a fixed amount of money ... if it (1) is payable to bearer ...; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction ..." 13 Pa.Cons.Stat.Ann. § 3104(a).

Section 9105 of the UCC refers to a negotiable instrument "or any other writing which evidences a right to the payment of money ... and is a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment...." There is no assertion that the annuities are negotiable. There is a dispute over whether they "evidence[ ] a right to the payment of money ... and [are] a type which is in the ordinary course of business transferred by delivery with any necessary endorsement or assignment". The annuities clearly evidence a right to the payment of money to the Debtor as beneficiary. Whether annuities

are transferred in the ordinary course of business by delivery is another matter. The annuities were assigned to Utica Mutual. Utica Mutual cites *In re Coral Petroleum, Inc.*, 50 B.R. 830 (Bankr.S.D.Tex. 1985), for the proposition that "ordinary course of business" is "what professionals would do to transfer such an interest." *Coral Petroleum* concerned transfer of a promissory note. *Id.* at 838. The court said:

> The test turns on findings as to the current usage of the market place.... If professionals who deal with a writing attach importance to possession of the writing, then the law likewise should attach significance to possession.

*Id.*, citing Harris, *Non-negotiable Certificates of Deposits: An Article 9 Problem*, 29 U.C.L.A. L.Rev. § 330, 372, 376 (1981). The court noted that under existing legal authority and the evidence it had been presented, "in order to transfer an interest in the Tricentrol Note, a professional would deliver the writing with the necessary indorsements and assignments. The evidence at trial indicated that all the parties to the lawsuit attached legal significance to possession of the Tricentrol Note." *In re Coral Petroleum*, 50 B.R. at 838.

Even if the annuities would generally be considered instruments under § 9104, § 3104 and *Coral Petroleum*, in this particular case, under the terms of the annuities, the assignment would not be recognized or honored by the issuer unless and until the assignment was registered with the issuer's home office. *See* Stipulations Relating to Movant's Request for Relief from Stay, Dkt. No. 542, at Exhibit 6, Utica

---

10. Debtor cites *Wonsey v. Life Ins. Co. of North America*, 32 F.Supp.2d 939 (E.D.Mich. 1998), which concluded that, under Michigan law, annuities are insurance policies. Michigan law is inapplicable here and we find that the persuasive authority holds that annuities are not insurance policies.

Debtor also cites *NationsBank v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 259, 115 S.Ct., 810, 815, 130 L.Ed.2d 740 (1995),

wherein the Court deferred to the Comptroller's conclusion that annuities are more like investments than insurance policies. The Court noted that many states, while regulating annuities under the insurance laws, do not classify them as insurance. *Id.* at 261–62, 115 S.Ct. at 815. The Court noted that characterizations that are suitable in one context may not be in another. *Id.* at 262, 115 S.Ct. at 815.

National's Flexible Payment Deferred Annuity—Ownership and Beneficiary Rights, and Exhibit 7, Security–Connecticut Annuity. *See also* Utica National Life Insurance Company Annuity, Stipulation at Exhibit 6 at unnumbered consecutive page 7 ("An assignment must be filed in writing on a form acceptable to the Company at its Home Office. The assignment will be effective on the date it is received at the Home Office. The Company is not responsible for the validity of an assignment or its release"); Security–Connecticut Life Insurance Annuity, Exhibit 7 at 40570 (2nd unnumbered page) ("The Company is not responsible for the validity or effect of any assignment of this Contract. No assignment will bind the Company until it is recorded at the Home Office"). Thus, in this case the "ordinary course" was that an assignment would be effective only after the Home Office was notified. U.S. Bank filed its financing statement on September 30, 1993. The assignment to Utica Mutual occurred on March 17, 1995, and was thereafter registered with the issuers' home offices.

■ Utica Mutual asserts that because the annuities were assigned to it and it has possession it is perfected, basing its argument on the premise that delivery of an insurance policy to an assignee is necessary to the validity of its assignment. *See In re Tyson Metal Products, Inc.,* 117 B.R. 181, 185 (Bankr.W.D.Pa.1990). However, the annuities under consideration are not insurance policies and there is no evidence that delivery of the annuity contract is required to validate an assignment. The Home Office's requirement to have notice of an assignment in a format acceptable to it (while at the same time denying responsibility for the validity or effect of an assignment) is best understood as a demand to know to whom it should issue payments. Because we find that U.S. Bank was properly perfected before the assignment and before perfection of junior security interests, the assignment to Utica Mutual does not defeat U.S. Bank's rights.[11]

Having rejected applicability of the other UCC provisions relied upon by the parties, we turn to general intangibles. We find that the annuities are general intangibles under § 9106 of the UCC. Section 9106 defines general intangibles as

> Any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, investment property and money. All rights to payment earned or unearned under a charter or other contract involving the use or hire of a vessel and all rights incident to the charter or contract are accounts.

U.S. Bank cites *Matter of Newman,* 993 F.2d 90 (5th Cir.1993), which held that annuities are general intangibles and not instruments. In *Newman* the annuity contract provided, as do those in this case, that an assignment was not binding on the issuer until received at its home office. Because mere delivery of the contract with an assignment was not effective to transfer the right to payment, the appellate court held that it was not an instrument.[12] The

---

**11.** We note that in *NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995), in describing annuities, the Supreme Court said

> In sum, modern annuities, though more sophisticated than the standard savings bank deposits of old, answer essentially the same need. By providing customers with the opportunity to invest in one or more annuity options, banks are essentially offering financial investment instruments of the kind congressional authorization permits them to broker.

*Id.* at 260, 115 S.Ct. at 815.

**12.** Cf. *West Loop Sav. Ass'n. v. Knostman,* 1992 WL 511854 *2, *3 n. 2 (S.D.Tex.), affirmed sub nom. *Matter of Newman,* 993 F.2d 90 (5th Cir.1993)(annuity contract provided that life insurance company was not bound by assignment of the contract until it received notice of the assignment; even if annuity was an instrument, the question was whether West Loop had possession of the proper document to perfect its interest; it had the annuity certificate, not the annuity contract). In the matter before us it is not clear which documents Utica Mutual holds. However, because

district court held that the annuity contract did not establish that the person in possession of it had a right to payment of money. That right belonged to the beneficiary, the identity of which could not be changed unless the appropriate procedure was followed. On appeal, the Fifth Circuit was faced only with the issue of whether the creditor was properly perfected in the annuity. Because the annuity was held to be a general intangible, the court held that the creditor had to have filed a financing statement in order to be perfected. The court noted that a general intangible "is essentially a bundle of rights such as those inherent in a franchise, a chose in action, a copyright, or an annuity". 993 F.2d at 93, citing *Flanigan's Enterprises, Inc. v. Barnett Bank of Naples*, 614 So.2d 1198, 1201 (Fla.App. 5 Dist.1993), *affirmed* 639 So.2d 617 (Fla.1994)(citing 73 C.J.S. Property § 15 (1983)). The court cited *In re Bell Fuel Corp.*, 99 B.R. 602, 604 (E.D.Pa.), *aff'd* 891 F.2d 282 (3d Cir.1989)(TABLE), for the proposition that a contractual right to receive insurance proceeds constitutes a chose in action and thus a general intangible. The court reasoned that the contractual right to receive payment under a business interruption insurance policy was subject to the creditor's security interest in general intangibles.[13] "A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer." 13 Pa.Cons. Stat.Ann. § 9402(g). Because U.S. Bank's secured claim exceeds available annuity proceeds, there are no "net proceeds" to

pay any other creditor, including Utica Mutual.

### Is U.S. Bank Properly Perfected?

U.S. Bank's 1993 financing statement is signed by the Debtor and provides that it covers

All of Debtor's now and hereafter owned and otherwise acquired goods (including, but not limited to, products of, accessions to, and general intangibles for such goods and, further, including equipment, inventory and fixtures), money, documents, instruments, accounts, chattel paper, general intangibles, and all other property to which a security interest may attach under Division 9 of the Uniform Commercial Code, and proceeds of all and any of the foregoing (as the terms ... "general intangibles" ... are defined and/or used in Division 9 of the Uniform Commercial Code ....)

Exhibit 2 to U.S. Bank's Motion for Relief from Stay. (In 1996 U.S. Bank filed another financing statement after Debtor changed its name from Custom Coals International to Custom Coals Laurel which will be addressed below.) Section 9402 provides that a financing statement is sufficient if it names the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information may be obtained, and a mailing address of the debtor and "contains a statement indicating the types, or describing the items, of collateral".

Utica Mutual asserts that because U.S. Bank had notice that Utica Mutual had a

---

we find that the annuities are general intangibles and that U.S. Bank has the first perfected security interest, what documents Utica Mutual holds is immaterial and we need not resolve this question.

**13.** In this case, Debtor asserts an interest in the annuities "limited to a reversionary interest only if Utica [Mutual] were ever released from the DEP bond obligations." *See* Debtor's Memorandum of Law in Opposition to *Motion for Relief From Stay by U.S. Bank f/k/a United States Bank in Johnstown*, Dkt. No. 543, at 3. Debtor assigned the annuity to

Utica Mutual as security for the indemnity and as between Debtor and Utica Mutual Debtor may have a reversionary interest. However, before the assignment to Utica Mutual, Debtor had conveyed a security interest in the annuity, a general intangible, to U.S. Bank. Although the annuity can stand as collateral for two obligations (to U.S. Bank and to Utica Mutual), the question is which entity is in first position. Debtor could only convey to Utica Mutual what interest Debtor had. That interest was already encumbered by U.S. Bank's perfected security interest.

course of dealing with Debtor and related companies involving assignment of annuities, U.S. Bank "had a duty" to specifically identify annuities in its financing statement. Utica Mutual's Response to Motion for Relief from Stay at ¶ 46. Utica Mutual alleges that U.S. Bank has been acting as escrow agent with respect to other annuities assigned by Debtor's affiliate, Custom Coals Dilltown, to Utica Mutual. *Id.* at 45. Exhibit F attached to Utica Mutual's Response to U.S. Bank's motion for relief from stay is a copy of the escrow agreement. The parties to the agreement are Utica Mutual, Custom Coals Dilltown, and U.S. Bancorp Trust Company. Neither Debtor nor U.S. Bank is a party. U.S. Bank's averment that U.S. Bancorp is a separate entity from U.S. Bank is not challenged. Custom Coals Dilltown, likewise, is also an entity distinct from Debtor. Utica Mutual's argument in this regard is not supported by the document or any other evidence and is without merit.[14]

■ The Glenn Trust asserts that the 1996 financing statement filed by U.S. Bank after Debtor's name changed was defective inasmuch as it was not signed by the Debtor. However, U.S. Bank was not required to file another financing statement unless it wanted to secure property acquired after the name change or unless Debtor's name change rendered U.S. Bank's financing statement "seriously misleading". 13 Pa.Cons.Stat.Ann. § 9402(g)("Where the debtor so changes ... its name ... that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of

that time"). The annuities do not constitute property acquired after the Debtor's name changed. The Glenn Trust's argument is not supported by § 9402(g).

■ The Glenn Trust asserts that U.S. Bank's 1996 financing statement is seriously misleading because the *exhibit* to the 1996 UCC–1 form refers to "Custom Coals International", Debtor's former name, and not "Custom Coals Laurel". *See* Stipulations at Exhibit 22. Assuming for purposes of this argument that a new financing statement was required to be filed, we note that the name on the financing statement itself is Debtor's new name, "Custom Coals Laurel". Section 9402(g) refers to a seriously misleading name on the financing statement itself, not to the exhibits to the financing statement. The 1996 financing statement is not seriously misleading at all inasmuch as it lists Debtor's current correct name.

We have examined the cases the Glenn Trust cited in support of its argument that the 1996 financing statement is seriously misleading and conclude that they do not prove the point the Glenn Trust attempts to make. The cases referred to involve the capacity of the entity with respect to which the financing statement was filed. *See In re Lintz West Side Lumber, Inc.,* 655 F.2d 786 (7th Cir.1981)(regarding financing statement filed under owners' names, not corporate name, it was reasonable for creditors to assume that a corporate asset would not be encumbered under the individuals' names); *In re McCauley's Reprographics, Inc.,* 638 F.2d 117 (9th Cir.1981)(financing statement and underlying loan documents identified debtor by partnership, not corporate, name; financing statement was seriously misleading); *In re Davadick,* 82 B.R. 391

---

**14.** Utica Mutual also argues that because U.S. Bank's financing statement refers only to general intangibles and not annuities specifically, the financing statement does not contain an adequate description of the collateral. We disagree. The purpose of including "general intangibles" in financing statements is to avoid the necessity of listing every possible

item of collateral. Furthermore, § 9110 provides that "For the purposes of this division any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." We find the description sufficient to notify the world that U.S. Bank claimed an interest in all of Debtor's general intangibles.

(Bankr.W.D.Pa.1988)(financing statement filed in debtor's trade, not true, name); *In re Hinson and Hinson, Inc.*, 62 B.R. 964 (Bankr.W.D.Pa.1986)(indexing financing statement under debtor's trade name alone is insufficient); *In re Raymond F. Sargent, Inc.*, 8 U.C.C. Rep. Serv. (Callaghan) 583 (Bankr.D.Me.1970)(financing statement filed under "Raymond F. Sargent Co., Inc." was seriously misleading because debtor's exact name was not anywhere on the financing statement); *Reisdorf Bros., Inc. v. Clinton Corn Processing Co.*, 130 A.D.2d 951, 516 N.Y.S.2d 375 (1987)(misspelled name ("Dragan" spelled as "Dragon") was seriously misleading). None of these cases correspond to the issue at hand.

■ The test of whether a name on a financing statement is seriously misleading is whether a reasonable search under the debtor's true name would reveal the filing. "If so, it is assumed that the searcher is on notice to inquire further to discover the correct identity of the debtor." *In re Hinson and Hinson, Inc.*, 62 B.R. 964, 966 (Bankr.W.D.Pa.1986), quoting *In re McCauley's Reprographics, Inc.*, 638 F.2d 117, 119 (9th Cir.1981). This case is more akin to *In re Sounds Distributing Corp.*, 42 B.R. 274 (Bankr.W.D.Pa.1984), wherein the court held that financing statements identifying the debtor as "Norton L. Kalinsky d/b/a Sounds Dist. Corp." and "Norton L. Kalinsky d/b/a Sounds Distributors" were not seriously misleading to those searching for "Sounds Distributing Corporation". "Perfect accuracy ... is not required as long as the financing statement contains sufficient information to put any searcher on inquiry...." *Id.* at 275 (citation omitted). In the matter before us, a search for "Custom Coals" would lead to more than one "Custom Coals" entry and, therefore, would put a searcher on notice to inquire further to determine the correct entry. A search for "Custom Coals Laurel" would reveal the filed UCC–1. We find that a creditor looking for encumbrances against the property of this Debtor would not be misled by the 1996 financing statement, assuming, *arguendo*, that U.S. Bank was required to file one.

■ The Glenn Trust also argues that the financing statement U.S. Bank filed after Debtor changed its name is not effective because the amended financing statement was filed more than four months after the name change. Under § 9402(g) the time of filing of an amended financing statement is relevant only with respect to whether the secured party is secured in collateral acquired more than four months after a "seriously misleading" name change. The annuities at issue herein were acquired before the name change. Accordingly, the fact that U.S. Bank amended its financing statement more than four months after the name change does not affect its security interest in the annuities.

### Whether Utica Mutual Has a Right of Setoff Enforceable against this Debtor

■ Debtor purchased annuities in February of 1994. On or about June 1 of that year Utica Mutual issued bonds to the Pennsylvania Department of Environmental resources. Debtor delivered to Utica Mutual a General Agreement of Indemnity on the same date. In March of 1995, Debtor assigned the annuities to Utica Mutual. Stipulations Relating to Movants' Request for Relief from Stay, Dkt. No. 542, at ¶¶ 5–10. Utica Mutual claims "a complete right of setoff" in the annuities because Debtor is obligated to Utica Mutual under the Indemnity Agreement in amounts in excess of the annuity proceeds. *See* Utica Mutual Insurance Company's Brief in Opposition to U.S. Bank's Motion for Relief from the Automatic Stay, Dkt. No. 544 at 6. U.S. Bank's perfected security interest, however, predated the issuance of bonds by Utica Mutual and attached to the annuity collateral before Utica Mutual issued the bonds or received the assignment. Upon assignment of the annuities, Utica Mutual got only what Debtor had to give and that was its interest in the annui-

ties—i.e., an interest subject to U.S. Bank's perfected security interest.

■ Utica Mutual argues that Utica National's obligation to pay Debtor on the annuity Utica National issued can be set off against Debtor's obligations to Utica Mutual because Utica Mutual was the 100 percent owner of Utica National at the time the annuity was issued. (It is now 79 percent owner of Utica National, the rest owned by another Utica Mutual affiliate.) Under § 553 of the Bankruptcy Code, however, setoff requires, *inter alia*, that the claim and debt be between the same parties. Utica National and Utica Mutual are distinct entities. Triangular setoffs are generally disallowed and Utica Mutual has not alleged that any exception to this rule applies. *See, e.g., In re Lang Machinery Corporation (Equibank v. Lang Machinery Co.)*, 1988 WL 110429 (Bankr. W.D.Pa.1988)("For a valid 'triangular' set-off to exist, Debtor must have formally agreed to permit" aggregation of debts by two creditors). *See also* 5 COLLIER ON BANKRUPTCY § 553.03[3][b] (15th ed. Revised 2000). In addition, § 9318 of the UCC provides that an assignee takes its rights subject to defenses that could have been asserted against the assignor. Under that section an account debtor's claim can have priority over a secured party's claim. However, in this case, Utica National is an account debtor, defined by § 9105 of the UCC as "[t]he person who is obligated on an account, chattel paper or general intangible." Utica Mutual is not an account debtor. Utica National is obligated on one of the annuities, Utica National and Utica Mutual are not the same entity, and Utica National is not asserting a right of setoff in this case. Thus, Utica Mutual's asserted right of setoff, assuming, *arguendo*, that there was such a right, is subject to U.S. Bank's security interest.

### Is Relief From Stay Appropriate?

■ We conclude that U.S. Bank is perfected in the annuities which are general intangibles and that it is in first position.

Whether it is nonetheless entitled to relief from stay is another matter. In its motion, U.S. Bank asserts that Utica Mutual holds annuities belonging to Debtor. Because the case is a liquidating chapter 11, U.S. Bank takes the position that the annuities are not necessary for reorganization. In addition, U.S. Bank asserts that Debtor has no equity in the annuities inasmuch as its debt to U.S. Bank of over $1.4 million exceeds the $700,000 value of the annuities. These allegations do not appear to be contested. However, the focus of the proceedings to date has been on the question of which entity is perfected.

There is no evidence of record that granting relief from stay would cause a default as to the DEP, although granting relief from stay would impinge on the indemnity agreement between Debtor and Utica Mutual which provides that "...the Company requires complete indemnification." Stipulations, Dkt. No. 542, at Exhibit 9, "Whereas" clause. Nothing of record indicates that this assignment was required by the DEP. At the time of the hearing in this matter Utica Mutual did not have a right to collect pursuant to the assignment. Thus, it appears that U.S. Bank is entitled to relief from stay. If the DEP in fact required collateral security and granting relief from stay to U.S. Bank would affect the DEP's security, any party in interest may file a motion for reconsideration within ten days. The motion must include an affidavit verifying facts with respect to bond forfeiture.